## LOWER, Respondent, v. LOWER, Appellant.

### (199 N. W. 199.)

(File No. 5278.   Opinion filed May 28, 1924.)

**Deeds—Escrow—Delivery—Real Property—Deeds to Grantor's Wife and Children, Deposited with Bank Under Arrangement for Recording, Held Effective at His Death.**

Deeds conveying lands to grantor's wife and children and deposited with bank under arrangement that it would record them, after his death, held final disposition of property, vesting title in grantees.

Appeal from Circuit Court, Faulk County; HON. J. H. BOTTUM, Judge.

Suit by Hettie Lower against Roy Lower to determine adverse claims. From a judgment for plaintiff and order denying a new trial, defendant appeals. Affirmed.

*F. E. Snider,* of Faulkton, for Appellant.

*Campbell & Fletcher,* of Aberdeen, for Respondent.

Appellant cited:   38 L. R. A .(N. S.) 941; Hayden v. Collins, 81 Pac. 1120; Johnson v. Johnson, 54 Atl. 378; Walter v. Way, 48 N. E. 421; Magoffin v. Walros (N. D.), 178 N. W. 134; Padden v. Padden (Wis.), 177 N. W. 22; Wortz v. Wortz (Minn.), 150 N. W. 809; Williams v. Ked, 170 Cal. 631, 151 Pac. 1.

Respondent cited:   Ann. Cases 1915C, 378; Haeg v. Haeg (Minn.), 55 N. W. 1114; Klabunde.v. Casper ('Wis.), 121 N. W. 137; 18 C. J. 208; 8 R. C. L. 995; Matteson v. Matteston, 129 Iowa 514, 117 N. W. 755, 17 L. R. A. (N.S.) 1167; Bell's Estate, 150 Iowa 725, 130 N. W. 789; White v. Watts, 118 Iowa 549, 92 N. W. 660.

ANDERSON, J.   The facts of this case as shown by the evidence are practically without dispute.   W. H. Lower in his lifetime decided to make disposition of his land so that in the

event of his death title to his lands would vest in his wife, and certain of his children. Pursuant to this purpose, he and wife, July 28, 1919, went to witness J. A. Dixon, president of State Bank of Seneca, this state, at which Lower kept the papers and transacted all his business with reference to property. Dixon was intimately acquainted with Lower. Lower deposited his moneys from time to time in the bank, and Dixon kept for him his certificates of deposit, and attended to his real estate loans. Lower's papers were kept in a safety deposit box in the bank to which he did not at any time have access during Mr. Dixon's connection with the bank, but he did have access thereto after Mr. Dixon severed his connection with the bank. On the day in question. Lower and wife had Dixon draw the three deeds involved in these proceedings. At the time he instructed Dixon to draw the deeds he said to Dixon:

"I want you to make out three warranty deeds so as to divide my land among my children and wife so that it will not be necessary to go through court after my death."

Dixon asked him why he did not make a will. To which Lower replied:

"I don't know anything about a will, and I do not want any monkey business over my estate after my death."

After the deeds were drawn, Lower said:

"Dixon, take care of these deeds for me. Keep them in a safe place, and upon my death I want you to immediately record them, and give them to the grantees named in the deeds."

He further said:

"This is a final disposition of the land, and I expect you to follow my instructions fully in regard to having the deeds recorded after my death."

After that the deeds were placed in the safety deposit box, where they remained until his death, at which time they were taken from the box by plaintiff and placed, of record. It is contended by appellant that this does not make such showing of delivery as is sufficient under the law to vest title in the grantees in the deeds.

"It has also been said that a delivery may be by acts or words, or by both, or by one without the other. But it is well settled that several things are necessary to constitute a valid or

effective delivery of a deed. One of the essential requisites of a sufficient delivery is that the deed passed beyond the dominion and control of the grantor. Another requisite is the intention of the grantor, and of the person to whom the deed is delivered, that it shall presently become operative and effectual. The essence of delivery is the intention of the parties. In order to make the delivery valid, it must be manifest that the grantor intended the grantee to become possessed of the estate. It is not essential in all cases that the deed should be delivered into the actual possession of the grantee. It may be delivered to a third person for the benefit of the grantee. * * * . .

"If a future control by the grantor is retained over the deed, no estate passes."

. Walter v. Way, 170 Ill. 96, 48 N. E. 421.

In case of Kyle v. Kyle, 175 Iowa, 734, 157 N. W. 284, we find this statement:

Speaking of delivery, "ordinarily it is the simple transfer of possession of the written instrument from the grantor to the grantee with intent on part of the grantor to convey and on part of the grantee to acquire title to the property described therein. But an actual manual transfer of the paper is not necessary. A delivery may be effected by acts without words, or by words without acts, or by both words and acts, assuming the instrument to have been properly executed [and] ready for delivery." 8 R. C. L. 995; 18 C. J. 208; Williams v. Kidd, 170 Cal. 631, 151 Pac. 1, Ann. Cas. 1916E, 703; Wortz v. Wortz, 128 Minn. 251, 150 N. W. 809; O'Connor v. McCabe (S. D.) 192 N. W. 370. . . .

From the authorities it would seem that the doctrine that the intention of the grantor as gathered from the facts and circumstances surrounding execution of the deeds is controlling. We believe that the record in this case clearly shows that the intention of Lower at the time he executed the deeds was to divest himself of his title to the land involved. He said: "Dixon, take care of these deeds for me. Keep them in a safe place." He did not say: "Keep them in my deposit box," or "Keep them where I can get at them." While under the instruction Dixon had full authority to keep the deeds anywhere, and if he had so desired could have taken them with him, from a careful study of

this record it seems clear that Lower did not reserve dominion over these deeds and there is abundant testimony showing that he did not claim any interest in them.  Lower said: "This is a final disposition of the land, and at my death have these deeds recorded."  This statement unequivocally conveys the thought that is entirely in harmony with his various statements relative to this transaction.  It points unerringly to one objective, to wit, the disposition of the land in the manner by him devised.  Further showing that his plan of disposition was clearly and well thought out, we find this statement:

"I have already given Roy the equivalent of a quarter section of land, and for this reason I am not leaving him anything now, but Roy will receive his share in cash of what is left after my death."

Roy was his son.  Again Lower said to Dixon:

"I do not want you to say anything about these deeds being made out and left with you so that the children will know that I have made final disposition of the land in their favor."

We have considered all the assignments of error, and are satisfied that they are without merit.

From this record we are convinced that the judgment and order of the trial court should be, and are, affirmed.

Note.—Reported in 199 N. W. 199.  See, Headnote, American Key-Numbered Digest, Deeds, Key-No. 61, 18 C. J. Sec. 114.

On delivery of deed to third person with direction to await grantor's death, see notes in 54 L. R. A. 865; 9 L. R. A. 317, 38 L. R. A. (N. S.) 942.

On delivery of grant, see Rev. Code 1919, Sec. 524, and annotations Kerr's Cyc. Code, 1920, Civ. Code, Sec. 1054.