STALTING et al, Appellants, v. STALTING et al, Respondents.

(217 N. W. 386.)

(File No. 5937. Opinion filed December 31, 1927.)

See, also, 52 S. D. 318, 217 N. W. 390.

*Danforth & Barron,* of Sioux Falls, and *H. Van Ruschen,* of Salem, for Appellants.

*Bogue & Bogue,* of Parker, for Respondents.

CAMPBELL, P. J.   One Julius Stalting, during and prior to the year 1906, owned and resided upon the S. ½ of section 13, township 101 north, of range 54, in McCook county, S. D., and did not alienate said land prior to his death, except as hereinafter set out.   During the year 1906 Julius Stalting was a widower.   Shortly thereafter he removed from South Dakota, and ultimately to Oregon, where he died intestate in 1922.   After his removal from South Dakota, he remarried, and, at the time of his death, left as his heirs his widow, Mary K. Stalting, four sons, Chris, Herman, George, and Albert J., and three daughters, Mrs. Mary Kingsley, Mrs. Emma Hoffine, and Mrs. Abbie Collins Chapel.   After the death of Julius Stalting, his widow, Mary, by quitclaim deed, transferred all her right, title and interest in his real property to the three sons, Herman, George, and Albert J., in equal shares.

Thereafter two of the sons, Albert J. and George, instituted this action against their coheirs and against Ray Kingsley, Luella Kingsley, O. D. Kingsley, Valura Kingsley, and Iona Kingsley (children of Mary Stalting Kingsley and grandchildren of decedent), and against Merle Meyers Hoffine (son of Emma Stalting Hoffine and grandson of the decedent), alleging the death of the decedent intestate, and his ownership at his death of the said S. ½ of section 13, alleging their heirship, and that by virtue thereof they succeeded each to an undivided one-seventh interest in and to said real estate, and praying to have their said interests quieted in them against the claims of the defendants, etc.   To this complaint Chris Stalting filed a separate answer, claiming title to the E. ½ of the S. W. ¼ of said section 13 by conveyance from Julius Stalting.   Abbie Collins Chapel filed her separate answer, claiming title to the N. ½ of the S. E. ¼ of section 13 by conveyance from Julius Stalting.   The Kingsley grandchildren filed their separate answer, claiming title to the W. ½ of the S. W. ¼ of said section 13 by conveyance from Julius Stalting.   And the grandchild Merle Meyers Hoffine filed his separate answer, claiming title to the S. ½ of the S. E. ¼ of said section 13 by conveyance from Julius Stalting.   And each of the separately answering defendants above named counterclaimed, seek-

ing adjudication of title in them in accordance with the allegations of their respective answers. Plaintiffs filed their denial by way of reply to said counterclaims, and alleged that the several conveyances relied upon by the defendants were never in fact delivered, but were part of an invalid attempt by the said Julius Stalting to make a testamentary disposition of his property, and upon the issues so framed by the pleadings the trial was had to the court without a jury.

The only witness who testified with reference to the execution and delivery of the conveyances relied upon by the separately answering defendants was one R. H. Armstrong, called in behalf of the defendants, who testified that he had been for more than 30 years president of a bank at Canistota in this state where he resided, and that he was also a notary public; that in 1906 he was acquainted with Julius Stalting, who for a number of years had owned and lived upon the S. ½ of section 13, township 101, range 54, about five miles southeast of Canistota; that on February 10, 1906, Julius Stalting came into the bank of the witness at Canistota and told witness that he desired witness to prepare four deeds for him covering four different 80-acre tracts, each constituting a part of said S. ½ of section 13, and told the witness that he desired to deed one 80 to his son Chris Stalting, one 80 to his daughter Abbie Collins, one 80 to the children of his daughter Mrs. Kingsley, and the other 80 to the children of his daughter Mrs. Hoffine, and described the different 80's that he wished to deed to each of said grantees.

The witness further testified that at that time, and on that day, in the presence and pursuant to the request of said Julius Stalting, witness prepared four warranty deeds upon blanks in the customary form for such instruments (which deeds we will hereinafter designate in this opinion as deeds 1, 2, 3, and 4, respectively), each of which deeds was dated February 10, 1906. Deed 1 purported to convey from Julius Stalting to Chris Stalting, for "one dollar and other valuable consideration," the E. ½ of the S. W. ¼ of said section 13. It was completed by the witness, and signed in his presence by the grantor Julius Stalting on the day of its date. Deed 2 purported to convey from Julius Stalting to Abbie Collins, for the same named consideration, the N. ½ of the S. E. ¼ of said section 13, and was likewise completely filled out by the witness

and signed by Julius Stalting in his presence on the day of its date. With reference to deed 3 it purported to convey, upon the same named consideration, the W. ½ of the S. W. ¼ of section 13, and was completely made out and signed by the grantor in the presence of the witness upon the day of its date, excepting that the space provided in the form for the name of the grantee was left entirely blank. Deed 4 purported to convey, upon the same named consideration, the S. ½ of the S. E. ¼ of said section 13, and was completely made out and signed by the grantor in the presence of the witness upon the day of its date, excepting that, as in the case of deed 3, the space provided for the name of the grantee was left entirely blank.

The witness testified with reference to deeds 3 and 4 that the grantor wished to deed the property described in deed 3 to his grandchildren, being the children of his daughter Mary Kingsley, and wished it to go to them instead of their mother, because he did not want his son-in-law Kingsley to get hold of any of the property, and the names of said grandchildren were not placed in the deed as grantees at the date of its making, and prior to its signing, because the grantor did not remember said names. The grantor stated that he desired the property described in deed 4 to be deeded to his grandchildren, the children of his daughter Emma Hoffine, for the same reason, and the name of the grantee was not inserted in that deed, on the day of and prior to its signing, for the same reason, that the grantor could not remember it. With reference to the names of the grandchildren who were to be the grantees in deeds 3 and 4, respectively, the witness was not entirely positive whether the grantor, Julius Stalting, was later to return and furnish the names to be inserted or whether the witness himself was to secure the names and insert them.

After the signing of the four deeds as above set out, the grantor left each of said deeds with the witness, and instructed the witness, as to each deed, to keep it until after his death, and then deliver it to the grantee. The witness was a notory public at the time said deeds were signed, but he did not on that day place his certificate of acknowledgment upon any of the deeds after their signing by the grantor, nor after their delivery to the witness with instructions to keep them safely and hand them over to the grantees upon the death of Julius Stalting. Witness placed the

deeds in the vault in his bank, and there they remained until after the death of Julius Stalting in 1922. Witness had no written authority from Julius Stalting to insert the names of the grandchildren in deeds 3 and 4, and he did not insert such names until after the death of Julius Stalting. After Julius died, the witness secured from Chris Stalting the names of the Kingsley grandchildren and inserted them in deed 3. He inserted therein the names of all the Kingsley grandchildren who were living at the date the deed was signed by the grantor (and all of them are still living), and also the name of another Kingsley grandchild, Lyle, who is still living, but was born after deed 3 was signed by the grantor. He also secured from Chris Stalting the name of the Hoffine grandchild, and inserted that as grantee in deed 4. He thereupon placed his certificate of acknowledgment and notarial seal upon each of the deeds, dating the certificate February 10, 1906, being the day when the grantor executed the deeds in his presence. He thereup delivered the four deeds to the respective grantees or to Chris Stalting for said grantees, and they were duly recorded.

Upon this state of facts the learned trial judge determined that deeds 1 and 2 were valid conveyances, while deeds 3 and 4 were not, and accordingly entered his decree quieting the title to the E. ½ of the S. W. ¼ of section 13 in Chris Stalting pursuant to deed 1, and to the N. ½ of the S. E. ¼ of section 13 in Abbie Collins, subsequently remarried, and now Abbie Collins Chapel, pursuant to deed 2. The decree quieted the title to the other two 80's (attempted to be conveyed by deeds 3 and 4) in Chris Stalting, Herman Stalting, George Stalting, Albert J. Stalting, Emma Hoffine, Mary Kingsley, and Abbie Collins Chapel, an undivided six sixty-thirds to each, with an additional seven sixty-thirds each to Herman, George, and Albert J., representing the interest of the widow, Mary K. Stalting, previously transferred to them by quitclaim deed hereinbefore referred to.

From so much of this decree as quiets the title to the E. ½ of the S. W. ¼ in Chris Stalting and the N. ½ of the S. E. ¼ in Abbie Collins Chapel, and from the order denying their motion for new trial, the plaintiffs have appealed. There is really but one question involved in this appeal, and that is a question of fact; namely, What was the intention of the grantor at the time he left deeds 1 and 2 with the witness Armstrong?

██ ██ Respondents contend that he intended the instruments then to take effect as deeds conveying a present interest to the grantees, although the enjoyment thereof was to be postponed until the death of the grantor. Appellants contend that, when the grantor left these deeds with the witness Armstrong, he was in effect seeking to accomplish a testamentary disposition of his property, and that the deeds cannot have effect as deeds, nor can they be given effect as a will, because two of the deeds were not effective for any purpose, and, further, because there was no completed delivery, and none of the deeds were executed in the manner and form required by statute for the execution of a will. The matter of delivery of an instrument which is in form a deed by the grantor to a third person to be delivered by the third person to the grantee at the death of the grantor has been frequently before the courts. A number of cases will be found collected in a note in 54 L. R. A. at page 865, and there is a very interesting article by Professor Bigelow, dealing with the topic entitled "Conditional Deliveries of Deeds of Land," in 26 Harvard Law Review at page 565. There is some disagreement in the authorities as to just what situation thereupon arises, and just what consequences follow, particularly in the case where the grantor seeks to retain control of the instrument, and says in substance to the depositary, "If I do not call for this or give you some other instructions, you will deliver it to the grantee after my death." We believe the sound rule, and that sustained by the weight of authority, is that, if the grantor unconditionally hands over the deed to the depositary, placing it beyond the control and dominion of the grantor, with instructions to transmit to the grantee at grantor's death, there is then a valid, effective, and irrevocable delivery of the instrument as a deed, and a present interest in the realty passes at that time to the grantee, although the enjoyment thereof is deferred until the death of the grantor. If, however, when the instrument is handed over to the depositary, the grantor retains control and dominion over it, and the instruction is to deliver the deed to the grantee at grantor's death, unless otherwise directed in the meantime, there is no delivery of a deed, but merely an effort to make a will in a manner not recognized by the law; the depositary remains the agent of the grantor only, and his authority to deliver is terminated by the death of the grantor, and the instrument can have no effect, unless

it was executed with the formalities required for the execution of a will. (See Garren v. Shook, 306 Ill. 154, 137 N. E. 489; Thompson on Real Property, §§ 3947, 3950; Devlin on Deeds (3d Ed.), § 282.

The real question in the case, then, is one of fact as to the intent of the grantor at the time he left deeds 1 and 2 with the witness Armstrong. Professor Bigelow, in the article above cited, sets out the matter as follows:

"Suppose that A. executes in favor of B. a deed of Blackacre and gives it to X., and says, 'This is for B., give it to him at my death.' What rights arise out of this transaction?

"At the outset a rather difficult question of fact sometimes presents itself. Does A. mean to keep control over his deed so that he still has the right to take it back, with the result that the situation really is that X. is to deliver the deed to B. only if A. does not tell him to do something else with it, i. e., is X. really holding it simply as A.'s depositary; or has A. definitely parted with all control over it, does he regard the transaction as finished so that the matter of B.'s getting the land is only a question of time? If the former view be taken of the facts, the whole question falls. The decided preponderance, both of decisions and dicta, is that unless A. relinquishes all control over the instrument at the time of the delivery to X. it differs in no wise from a will, because not until the moment of A.'s death can it be regarded as definitely intended to be operative; and being in substance a will, it must fail of effect because it does not satisfy the statutory requirements of a will."

See, also, 18 C. J. p. 208; Grilley v. Atkins, 78 Conn. 380, 62 A. 337, 4 L. R. A. (N. S.) 816, 112 Am. St. Rep. 152.

■ The principles which will guide the court in the determination of the question so arising have been outlined by this court in the cases of Trumbauer v. Rust, 36 S. D. 301, 154 N. W. 801, 11 A. L. R. 10, and O'Connor v. McCabe, 46 S. D. 269, 192 N. W. 370. In the instant case nothing was said by the grantor when he left the deeds with Armstrong as to retaining control over them either one way or the other. He simply said in substance, "Keep these safely, and deliver them to the grantees at my death." It is true that the witness Armstrong himself testified that, if Julius Stalting had later requested the return of these deeds, the witness

would have given them to him. This statement, however, is no evidence of the intention of the grantor, and should not have been admitted, and in this connection we think the language of the Iowa court is particularly apt as found in White v. Watts, 118 Iowa 549, 92 N. W. 660:

"It is true that, in answer to a question by counsel, the notary says he should have redelivered the deeds to the grantor had the latter, in his lifetime, demanded them; but this statement appears to have been no more than the witness' interpretation of his duty in the premises, and is without support in the instructions given him by the grantor, or in the circumstances surrounding the execution and deposit of the papers. He testifies without qualification that the deeds were left with him 'to be delivered after Mr. White's death.'"

██ To the same effect see Dean v. Parker, 88 Cal. 283, 26 P. 91; Corker v. Corker, 95 Cal. 308, 30 P. 541; Johnson v. Cooper (1927), 123 Kan. 487, 255 P. 1112. The intention of the grantor is, as we have said, a question of fact to be determined from his acts and statements and all surrounding circumstances at the time of the deposit of the deeds. The learned trial judge, by his decision in this case, has in substance determined that it was the intention of the testator, when he left deeds 1 and 2 with the witness Armstrong, to make a complete and irrevocable delivery thereof. From a careful examination of the entire record, we are of the opinion that the evidence fairly supports the decision of the learned trial judge upon this question of fact. At least we cannot say that his decision of this question is contrary to the clear preponderance of the evidence, and it follows, therefore, that the order and judgment appealed from must be, and they are, affirmed. Inasmuch as the appeal in this case is not adverse to the interests of any of the defendant respondents, excepting only Chris Stalting and Abbie Collins Chapel, those two respondents only may tax costs.

POLLEY, SHERWOOD, BURCH, and BROWN, JJ., concur.