MERKAMP, et al, Respondents, v. NILES, Appellant.

(*252* N. W. *636*.)

(File No. 7498. Opinion filed February 13, 1934.)

*D. K. Barrett,* of Plankinton, and *Roscoe Satterlee,* of Mitchell, for Appellant.

*Fellows & Fellows,* of Mitchell, for Plaintiffs Respondents.

*Miller & Shandorf,* of Mitchell, for Defendant Respondent Jens Jensen.

POLLEY, J. This action is brought to quiet title to two half sections of land in Aurora county. The land belonged to Andrew Jensen during his lifetime. He died intestate on the 24th day of July, 1931. The defendant Minnie Niles is decedent's sister. Defendant Jens Jensen is a brother of decedent and also administrator of decedent's estate. Plaintiffs are heirs at law of said decedent.

On the 13th day of July, 1925, decedent executed two deeds conveying the said land to Minnie Niles. These two deeds, together with other papers, were sealed up in an envelope and handed to the witness Loevinger, who was president of the Aurora County Bank. The other papers contained in said envelope were a written assignment to said Minnie Niles of two certificates of deposit, one for $2,000 and the other for $1,000, a bill of sale transferring to said Minnie Niles title to a considerable amount of personal property, and a check payable to her for $300. On the outside of the envelope containing these papers decedent made the following indorsement:

"To Aurora County Bank: in case of my death you are hereby authorized and instructed to deliver this envelope and the papers contained therein to Mrs. Minnie Niles. Dated

"July 13, 1925.

"[Signed] Andrew Jensen."

The envelope and contents were then handed to and left with Mr. Loevinger, with instructions that, if anything happened to decedent, or in case of his death, to deliver said papers to Mrs. Niles. The matter does not appear to have been again called to the attention of the witness until during the month of May, 1931, when decedent came into the bank and said: "Loevinger what do you charge for a box, a safety deposit box to keep my papers in?" On being told what a box would cost, he said: "Well I want one and I want to keep all my papers in there." He had some papers in his hand at the time. Witness gave him a box and left the room, but returned shortly, when decedent said: "Now, let me have those papers that I left for Minnie." Witness gave decedent the envelope containing the above-mentioned papers and again left the room. On returning to the room some little time later, decedent said: "I put all my papers in here and I put in Minnie's papers, if anything happens to me now, if I should die you hand Minnie

those papers, here are the keys." He had removed the deeds from the envelope in which they were contained when they were first left with the witness, and the envelope was not put in the box and was not seen by the witness thereafter. After decedent's death, the witness gave the contents of the box, including the two deeds involved, to Mrs. Niles, and on the 1st day of August, 1931, she caused the said deeds to be recorded in the office of the register of deeds, and now claims to be the owner in fee of the said land. Plaintiffs, as heirs at law of the said decedent, claim that the said deeds were never delivered to Mrs. Niles and were never effective to convey title to her, and that the same are null and void.

The case was tried to the court. Findings of fact, conclusions of law, and judgment were for plaintiffs, and defendant appeals.

■■ The deeds are regular on their face. They are in the possession of the grantee. They are presumed to have come lawfully into her hands, and constitute a prima facie case of ownership in the grantee, Minnie Niles. In order to establish their case, the plaintiffs have the burden of proving, and by a preponderance of the evidence, that there was not such a delivery of the deeds as to indicate on the part of the grantor an intention to immediately pass the title to the grantee, or that the deeds were not intended to become operative to pass the title until after the death of the grantor. As stated in plaintiffs' brief: "The only issue is as to the delivery of the deeds, the question being whether the grantor intended to part with all control and dominion over the instruments, thus making a valid delivery or whether he intended to reserve the right to alter or amend the disposition of his property and for that purpose retained some measure of control over the instruments, in which case, delivery must be held not to be had and the deeds void."

The question involved in this case has been considered by this court in the following cases: Trumbauer v. Rust, 36 S. D. 301, 154 N. W. 801, 802, 11 A. L. R. 10; O'Connor v. McCabe, 46 S. D. 269, 102 N. W. 370, and Stalting v. Stalting, 52 S. D. 309, 217 N. W. 386, 389.

In Trumbauer v. Rust, supra, a case on all fours with this, the court, speaking through Mr. Justice Whiting, said: " * * * In every case, the court has sought to determine the intent of

the makers and has held the writing to be either a deed or a testamentry conveyance according as the ascertained intent of the grantor was to convey a present interest with enjoyment thereof postponed, or was to postpone both the vesting of the interest and the enjoyment thereof, each case stood upon its own peculiar facts—the wording of the particular writing, the declarations of the maker at the time of executing the writing, in fact all surrounding circumstances tending to reveal the intent of the maker."

And again: "We are convinced that the clear intent of the makers was to transfer fee title to the grantee subject to a life estate reserved to themselves; that upon the delivery and acceptance of the deed by the grantee both he and appellants became possessed of rights thereunder which could not be changed by any future acts of the makers."

And again in Stalting v. Stalting, supra, this court, speaking through Mr. Justice Campbell, said: "We believe the sound rule, and that sustained by the weight of authority, is that, if the grantor unconditionally hands over the deed to the depositary, placing it beyond the control and dominion of the grantor, with instructions to transmit to the grantee at grantor's death, there is then a valid, effective, and irrevocable delivery of the instrument as a deed, and a present interest, in the realty passes at that time to the grantee, although the enjoyment thereof is deferred until the death of the grantor. If, however, when the instrument is handed over to the depositary, the grantor retains control and dominion over it, and the instruction is to deliver the deed to the grantee at grantor's death, unless otherwise directed in the meantime, there is no delivery of a deed, but merely an effort to make a will in a manner not recognized by the law; the depositary remains the agent of the grantor only, and his authority to deliver is terminated by the death of the grantor, and the instrument can have no effect, unless it was executed with the formalities required for the execution of a will. See Garren v. Shook, 306 Ill. 154, 137 N. E. 489; Thompson on Real Property, §§ 3947, 3950; Devlin on Deeds (3d Ed.) § 282."

In this case the direction to the depositary to deliver the deeds to Mrs. Niles was unconditional. She was not to perform any act of any kind, but the deeds were to be delivered to her upon the grantor's death.

From what is said in the above case, it appears to be the rule that the intent of the maker is to govern in all cases, unless some other conclusion is forced by law.

The execution of the deeds and the delivery thereof to the witness Loevinger was not done in secret. While there is no evidence that the decedent immediately notified the grantee or that he notified her at all, it is apparent from the record that the plaintiffs, and others who were not members of the decedent's family, as well as Mrs. Niles, were aware of the execution of these deeds within a very short time after they were executed. He repeatedly stated that Minnie was to have the land. He said, "I deeded these two half sections to Minnie and I left the piece of land up there for the rest of them." On another occasion, he said he had deeded a section of land to Mrs. Niles; and, as a reason for giving the land to Mrs. Niles, he said: "She has done more for me than anyone else." On another occasion, he said "That Minnie had done more for him than any of the rest and she deserved it." On another occasion, he said: "He had deeded a section of land to Mrs. Niles; that she was the only one of his relatives that ever did much for him and she always tried to make a home for him." On still another occasion, he said: "He gave her the land because she had done more for him than any of the rest of them."

It is apparent from the record that the decedent intended that Mrs. Niles should have this piece of land, and it is also apparent from the record that up to the hour of his death he believed that he had conveyed this land to her.

For the purpose of showing that decedent did not intend to part with dominion and control over the papers contained in the envelope given to the witness Loevinger, plaintiffs showed that shortly after the execution of the deeds he collected the interest on the certificates of deposit, transferred the proceeds to his checking account, and renewed the certificates. This he repeated several times and finally cashed the certificates themselves and transferred the proceeds thereof to his checking account. Some time prior to his death he had a public sale at which he sold all the personal property described in the bill of sale that he had placed in the envelope with the deeds. He also reduced his checking account until at one time it was not sufficient to pay the $300 check enclosed with the

deeds. These facts are of little, if any, weight. They show no intent on the part of the grantor to alter or cancel the deeds. When he put his papers in the safety deposit box he referred to the deeds as "Minnie's papers." He gave Loevinger the key to the box and said: "If anything happens to me now, if I should die you hand Minnie those papers." It is not shown that he ever mentioned them again or took any further interest in them whatever, and certainly there were no reservations or conditions made on this occasion. As said by this court in the Trumbauer Case, supra: "Whatever may have been the full intent of the maker at the time he executed the writing—whether to vest a present interest with enjoyment thereof postponed, or to postpone both the vesting of title as well as the enjoyment of the interest sought to be conveyed—one thing is beyond dispute: the maker intended that, at least after his death, title should vest in the grantee named. And another fact beyond dispute is that the maker died without undoing whatever he attempted to accomplish, thus leaving unequivocal evidence that he died intending and expecting his grantee to have full title to the property. To declare such a writing to be invalid prevents the carrying out of such clear intent and vests the property otherwise than as intended by the maker thereof—a thing no court should do unless driven thereto by some express provision of law."

The real test in this class of cases is, What is the intention of the grantor at the time of the delivery of the deed to the depositary? The subject is discussed at length in Snodgrass v. Snodgrass, 107 Okl. 140, 231 P. 237, 52 A. L. R. 1213, and note on page 1222.

 An attempt was made by plaintiffs to show that at one time after the execution of the deeds the decedent had declared that he was going to change or cancel them. The evidence offered by plaintiffs to support this contention was to the effect that decedent had had some difficulty or dispute with Mrs. Niles' son, and that decedent had stated that he would fix his property so that said son would never receive any of it. This, if true, comes far short of showing that he ever contemplated changing the conveyance to Mrs. Niles. Plaintiffs also tried to show that decedent had it in mind when he executed the deeds that, in case Mrs. Niles should die before he did, he could recover them and make such other dis-

position as he might desire. This contention is based upon a statement the witness Loevinger said he made to decedent at the time of the execution of the deeds. After decedent had given Loevinger directions for the preparation of the deeds, and told him that he also wanted to make out a bill of sale of all his live stock and an assignment of his certificate of deposit and a check for $300, Loevinger told him that "If anything happened to Mrs. Niles that he could get his papers and change them." This remark was not in response to anything said by decedent nor any request for information made by him. Decedent made no reply to witness' suggestion, nor is there anything in the record indicating that decedent heard what the witness said, and certainly there is nothing in the record indicating that decedent was in any wise influenced by what witness said.

In our opinion plaintiffs have failed to show that the deeds in question were not intended to convey the present title to the grantee as they purport to do on their face.

The judgment and order appealed from are reversed.

ROBERTS, P. J., and WARREN, J., concur.

CAMPBELL, J., concurs in result.

RUDOLPH, J., dissents.