HUBER, Appellant v. BACKUS, Respondent

(112 N.W.2d 238)

(File No. 9918. Opinion filed November 30, 1961)

**M. Q. Sharpe, John W. Larson,** Kennebec, for Plaintiff and Appellant.

**G. F. Johnson,** Gregory, **William F. Day, Jr.,** Winner, for Defendant and Respondent.

RENTTO, J.  This action to determine adverse claims was brought by the administrator of the estate of William C. Huber, who died of a heart attack February 1, 1959, to set aside certain deeds executed by the decedent in the summer of 1955 in which defendant is the grantee. It is his claim that they are invalid because (1) they were not properly executed and delivered; (2) they are an attempted testamentary disposition; and (3) they were obtained through fraud and undue influence and are therefore subject to a constructive trust in favor of decedent's estate. The administrator appeals from the judgment which determined his claims to the property to be void, invalid and groundless.

Decedent, a single man, had lived in and around Winner, South Dakota, most of his life. He died intestate at the age of 67. His heirs at law were eight living brothers and sisters and the children of two deceased brothers. The defendant, also a resident of Winner, is one of his sisters. That he had been successful in his real estate business and other activities is evidenced by the substantial amount of property he had accumulated. His later ventures into oil and mining apparently were less successful and in a measure motivated the transfers of property here involved.

For a period of approximately fifteen years, until about two or three years before his death, he had boarded with the defendant and her husband and in a way made that his headquarters, except that he had his own separate sleeping quarters. In addition she did his washing and cut

his hair. At the beginning of this relationship he received his board free but as times became financially more difficult for his sister and her family she charged him for board at a rate which started at $2.00 a week and gradually increased to $12.00 a week, which it was when he quit boarding at her home. After this he still ate a few meals there each week and she continued to cut his hair and do some of his washing. Toward this sister and her children, who were younger than his other nieces and nephews, decedent had a kindly feeling arising from this association; and because their financial circumstances were more difficult than those of his brothers and other sisters, whom he had previously assisted, he often stated that he was going to make provision whereby they would be taken care of.

During the winter of 1954-1955 decedent engaged in prospecting for uranium in California and other western areas. For some reason, not made clear in the record, he concluded that it was a dangerous business in which one's life was in danger, and required him to be away from Winner much of the time. On his return to Winner from that trip in June 1955 he had a conversation with the defendant and her husband, who was then in poor health, in which he proposed to deed some of his properties to her if she would permit him to continue to have the rents and profits therefrom and if she would reconvey to him any of such property that he might want sold or returned to him. He also stated that he would pay the taxes and the upkeep on the properties so conveyed to her. The defendant agreed to accept the conveyances subject to these conditions.

In that conversation decedent stated that he would make out a list of the properties that he wanted to deed to the defendant and suggested that her husband get a supply of blank deed forms. This he did and from the list of property descriptions furnished him by decedent, defendant's husband prepared separate deeds for each of the various properties on the list naming the decedent as grantor and the defendant as grantee. These were warranty deeds in the form prescribed by SDC 51.1403. without any reservations,

and recited a consideration of $1.00 "and other considerations". Decedent and defendant's husband then took the deeds to a lawyer's office where decedent acknowledged his signatures thereon. Promptly after that defendant's husband had them recorded after which they were kept at defendant's home where they were also available to the decedent.

Upon other occasions that summer decedent in a similar manner executed other deeds conveying additional properties to the defendant. These conveyances included real estate in South Dakota and one tract in California and another in Omaha, Nebraska. Some of the South Dakota properties so conveyed were subsequently reconveyed by defendant at the request of the decedent. The described conveyances did not constitute all of decedent's real property and in addition he was the owner of a substantial amount of personal property. In issue here are only the properties in South Dakota not reconveyed by defendant.

■ It is a general rule that delivery is essential to the effectiveness of a deed. In this state it is required by statute. SDC 51.1304 provides: "A grant takes effect so as to vest the interest intended to be transferred only upon its delivery by the grantor." To constitute a delivery the grantor must part with the legal possession of the deed and of all right to retain it. Cassidy v. Holland, 27 S.D. 287, 130 N.W. 771. The fact that a deed has been duly executed, acknowledged, and recorded is prima facie evidence of its delivery. 26A C.J.S. Deeds § 187; Wolf v. Wolf, 59 S.D. 418, 240 N.W. 349. Whether there was a delivery is a question of intent to be found from all the facts surrounding the transaction. McGillivray v. Wipf, 64 S.D. 367, 266 N.W. 724; McKenzie v. Birkholtz, 74 S.D. 173, 50 N.W.2d 95. On this record we think the trial court was warranted in concluding that these deeds had been legally delivered by the decedent to the defendant.

■ This view finds support in the conversation which decedent had with the defendant and her husband on

his return to Winner in the summer of 1955 and his conduct thereafter culminating in the deeds here involved. Concerning the manner in which decedent handled the deeds after their execution in the lawyer's office, defendant's husband testified as follows:

"Q. After Bill had either signed or acknowledged these deeds, what was done with them? A. Bill gave them to me and told me to take them up to the Register of Deeds' office and have them recorded.

"Q. Did you do that? A. I done it right away. He said, 'I'm going uptown'.

"Q. You did that? Yes sir, I did. * * *

"Q. Now then, what happened to the deeds after they had been recorded? A. I don't remember whether he got them or I got them, and I brought them home, and put them in my safe.

"Q. Were these deeds given to you after they had been recorded? A. They were."

Also significant in this connection is the fact that other deeds were executed on several later occasions that summer, all about three years before his death, without any claim by him during that time that there had been no delivery of them. To the contrary on numerous occasions during that time he told friends and associates that he had given some of his property to the defendant; that he had deeded the property to her to provide for her in case something happened to him and it wouldn't be necessary for her to go through probate; that he deeded a lot of his property to her and that he wanted her to have it as her property; that if he wanted to sell any of it she would deed it back to him; that if any of such property was sold the buyer could see her.

As supporting his contention of nondelivery the administrator points to the numerous acts of ownership that the decedent exercised over the property after the dates of

the deeds and continuing until shortly before his death. During that time some of the properties were sold through decedent's efforts under contracts for deed. In most instances these were signed by defendant, but in one instance it was executed by decedent himself and on another by him as her agent. All of these sales were consummated by deeds from the defendant except where the contract had been executed by decedent. He signed that deed. In 1957 when decedent wanted to mortgage some of the conveyed property to assist a nephew in getting a Land Bank loan, the defendant executed the required deeds, but on an occasion in 1958 he executed a mortgage in his own name on one of the conveyed premises without a conveyance from her. In his application for the Land Bank loan he indicated that he was the owner of some of the properties previously conveyed to defendant. While he paid the expenses of keeping up the conveyed property, as he had promised, he didn't pay the taxes thereon but he did pay his own taxes.

Admittedly some of the things that he did in this regard are inconsistent with the purport of the deeds—that he had divested himself of all interests in the property, but many more are consistent therewith. These inconsistent acts in and of themselves are not necessarily sufficient to overcome the presumed intent of a grantor. Strain v. Ferris, 65 S.D. 226, 272 N.W. 677. Moreover, in this case we have in addition to the deeds the oral arrangement which he and the defendant entered into when he conveyed these properties to her. We think the trial court could reasonably view these acts of ownership as flowing from this understanding rather than as evidencing antagonism to the deeds. In any event, under this record they would not compel a finding of nondelivery.

The administrator also argues that under the arrangement entered into the decedent reserved the right to recall any of the deeds involved. We do not share this view. It did not relate to the deeds that had been delivered and recorded but concerned only decedent's rights in the prop-

erty thereby conveyed during the remainder of his life. Under this arrangement his reserved right to sell the properties was to be effectuated by a conveyance from defendant which would seem to confirm rather than deny the delivery of these deeds to her. If he had intended that title was not to vest immediately in the defendant then there would be no reason for their oral understanding.

In this connection he also urges that there was no valid delivery of the deeds because it was not intended thereby to make an irrevocable transfer of a present estate in the property. Under our statutes that is not necessary. A future interest is subject to present transfer by deed. SDC 51.0220. The author of the annotation in 11 A.L.R. 23 at page 36 writes:

> "As is pointed out above, the term 'interest,' as used in this note, is not to be confused with 'estate.' A deed may pass a present interest in property, the estate in which is a future one. One has an interest in property when he presently owns or holds some property rights therein, regardless of the time at which the estate comes into enjoyment."

See also 76 A.L.R. 636; 11 A.L.R.2d 532.

In respect to the time of enjoyment, an interest in realty is either present or future. A future interest entitles the owner to possession of the property only at a future period. SDC 51.0215. A future interest is a vested interest when there is a person in being who will have a right, defeasible or indefeasible, to the immediate possession of the property when the intermediate estate or interest ceases. SDC 51.0217. * * * Such interests may be transferred in the same manner as present interests. SDC 51.0220. SDC 51.0228 is as follows: "A future interest may be defeated in any manner, or by any act or means, which the party creating such interest provided for or authorized in the creation thereof; nor is a future interest, thus liable to be defeated, to be on that ground adjudged void in its creation." The preceding portion of this paragraph is the language and logic

of the California court in Tennant v. John Tennant Memorial Home, 167 Cal. 570, 140 P. 242, 243 with our code sections substituted for identical provisions of their statutes.

■ ■ In that case the court had under consideration a deed which in addition to creating a life estate in the grantor also reserved to her "The right to revoke this deed as to the said property above described or as to any portion thereof, and further reserving to her, the said grantor, the right during her natural life to sell any of the above described property, and to sign and execute deeds therefor in her own individual name and to convey by any such deed a full, perfect and absolute title thereto to the purchaser thereof, and with right to use the proceeds arising from such sale or sales to her own use, without any liability for her or her estate to account therefor." While this right of revocation is part of the deed and more extensive than the oral arrangement here involved, we think the principles announced in that case are applicable here, at least in so far as the rights of the immediate parties are concerned. Clearly the reserved right to revoke the deeds does not make them invalid. See also St. Louis County Nat. Bank v. Fielder, 364 Mo. 207, 260 S.W.2d 483, 486. By these deeds decedent intended to pass to the grantee at once a vested future interest in the land, said interest being the entire fee following the termination of the reserved life estate.

■ The administrator next contends that the oral arrangement of the parties rendered the deeds an attempted testamentary disposition of property without the formalities required for the execution of a will, because they were revocable until the death of the grantor. In the St. Louis County Nat. Bank v. Fielder, supra, it is written:

"Likewise, it seems clear that neither the existence of a power to revoke nor its validity or invalidity has any bearing whatever on the question of testamentary character of a conveyance. Thus it requires something more than the reserva-

tion of a power to revoke alone to show an intention to make a testamentary disposition * * *".

Similar views are expressed in Tennant v. John Tennant Memorial Home, supra, as follows:

"So, also, the fact that in this case there is also reserved a power to revoke the deed and to sell the remainder is of no consequence in the argument upon the question whether it is or is not testamentary."

The reserved power to revoke does not destroy or restrict the effect of these deeds as conveyances. It merely provides the means by which the vested future interests conveyed thereby could be divested before they ripened into estates in possession.

In Trumbauer v. Rust, 36 S.D. 301, 154 N.W. 801, 802, 11 A.L.R. 10, this court observed that:

"There is no conflict of authority as to what distinguishes a deed from a testamentary conveyance. If it pass a present interest, or right, even though the enjoyment thereof be postponed until the death of the grantor, it is a deed; if it pass no present interest or right, but is dependent upon the death of the maker to consummate it, it is testamentary in its nature, notwithstanding it be denominated a deed and is a deed in form and in some essential characteristics."

That case also announced the basic guide that we must follow in deciding whether the instruments here involved are deeds or testamentary conveyances. As to this it said:

"In determining whether or not a writing is a deed, the controlling question and the ultimate object of inquiry should, in every case, be: What was the intent of the maker? If it was to postpone title and enjoyment until after his death, the writing is not a deed; if it was to confer

> title but to postpone the enjoyment thereof, it is
> a deed."

See also Merkamp v. Niles, 62 S.D. 241, 252 N.W. 636.

The decedent was a man of more than average experience in transactions concerning the disposition of real property. His conduct in getting these deeds prepared and recorded indicates that he knew something of the mechanics of conveying property by deeds and their legal consequences. In fact he insisted these deeds recite a monetary consideration which he required the defendant to pay. On several occasions he had stated publicly that he didn't believe in wills because they could be broken. Apparently he also knew something about wills.

In seeking his intention we must also bear in mind the form of the instrument he selected to accomplish his purpose and the fact that he knew it had to be acknowledged and recorded. Wills are not executed or preserved in that manner. Also it is significant that these deeds did not dispose of all his property, as is generally the case with wills and that he did nothing to undo them even though he survived their execution about three years during which he was obviously capable and competent to transact business. Nor was their execution surrounded with secrecy. On the contrary he announced the fact to many on numerous occasions.

From a study of this record, including the evidence concerning delivery, which is also pertinent on this question, we think it abundantly clear that by these deeds the decedent intended to confer title in the defendant but to postpone her enjoyment thereof. The court's findings and conclusions to that effect have ample support in the evidence. As was said in the Trumbauer case "To declare such a writing to be invalid prevents the carrying out of such clear intent and vests the property otherwise than as intended by the maker thereof—a thing no court should do unless driven thereto by some express provision of law".

Defendant and her husband on many occasions, both before and after the deeds in question, looked after these and other properties for the decedent in his absence from the state. In some respects he used their home as his office. The administrator suggests that they utilized such relationship to influence the questioned conveyances. On this issue the evidence shows only an opportunity for its exercise. That is not sufficient. McKenzie v. Birkholtz, supra. On the matter of impressing a trust on the property the trial court justifiably concluded that the administrator had failed in his proof. We have also examined the other matters urged by him but they appear to us to be without merit.

Affirmed.

All the Judges concur.