Helen M. LARSEN, Guardian of the Person and Estate of Levenes Dillion, an Incompetent Person, Plaintiff and Appellee,

v.

William D. MORRISON, Defendant and Appellant.

No. 12668.

Supreme Court of South Dakota.

Argued Jan. 29, 1980.

Decided June 18, 1980.

---

Frank J. Brady of Brady, Kabeisman, Reade, Abbott & Johnson, Yankton, for plaintiff and appellee.

Warren R. Neufeld, Pierre, for defendant and appellant; Richard D. Hagerty, Yankton, on brief.

HENDERSON, Justice.

## ACTION

Plaintiff-appellee Helen M. Larsen, the duly appointed guardian of Mrs. Levenes Dillion, commenced a declaratory judgment action under SDCL 21–24 for a determination on the ownership of certain property of which defendant-appellant, William D. Morrison, claimed ownership pursuant to a warranty deed executed by Levenes Dillion that was never recorded. Appellant appeals from the judgment entered by the circuit court in favor of plaintiff-appellee. We affirm.

## FACTS

Appellant contends that on January 2, 1963, Levenes Dillion executed a warranty deed whereby the property in question was transferred to himself and Margaret Dixon as joint tenants. This transaction took place in the law office of Harold Dwyer, who drafted and notarized the deed. Levenes Dillion is now incompetent; Margaret Dixon and Harold Dwyer are both deceased. Plaintiff's ward, Levenes Dillion, was at all times pertinent to this action the record owner of the real estate in question described as Lot Six (6) in Block One (1) of Wyman's Addition to Yankton County, South Dakota.

The testimony developed the following circumstances surrounding the disputed transaction. Both Mrs. Dixon and Mrs. Dillion were aunts of appellant. It appears that about the time the disputed deed was executed, appellant was involved in a divorce proceeding in Arizona. Appellant's ex-wife had apparently taken action against the property owned by him in South Dakota and, Levenes Dillion, concerned that he might not have a place to live in later years, indicated that she would like to give the questioned real estate to both her sister Margaret Dixon and him as joint tenants with rights of survivorship. Appellant claims that this discussion took place sometime shortly before Christmas in 1962. He indicated that because Levenes Dillion was concerned that the divorce would affect his property holdings in South Dakota and that she wished to retain the income of the property during her lifetime, both he and Margaret Dixon were instructed that any deed they were to receive should not be recorded prior to her death. Appellant testified that on January 2, 1963, the three parties went to Vermillion, South Dakota, and met with attorney Harold Dwyer, who drafted the deed in question. It was at such time Mrs. Dillion executed the deed which was acknowledged by Dwyer as a notary public. According to appellant's testimony, there was some discussion as to whether the deed should be filed at that time or left in the possession of Mr. Dwyer. It was appellant's testimony that the deed was left with Dwyer for safekeeping, and that Dwyer told appellant and Margaret Dixon that the house was theirs as soon as they recorded the deed. The record reveals that there was never any subsequent discussion among the parties after the deed was drawn. When asked if he ever had any conversations with Levenes Dillion about the transfer of this property, appellant stated, "No. She was aware that it was still in her name . . . It was understood that she held onto it until she died."

Appellant lived in the house in question prior to the execution of the deed and for sometime thereafter. He continued to pay rent to Levenes Dillion. After he moved out, appellant continued to rent it out on behalf of Levenes Dillion, keeping approximately twenty dollars ($20) per month for his services in managing the property. In June of 1968, appellant signed a lease for five years renting this property from Levenes Dillion. This lease was signed by both appellant and Margaret Dixon as agents for Levenes Dillion, which required the rent to be deposited in a joint bank account under the control of both lessor and lessee. Subsequently, appellant was allowed to sublet the property on behalf of Levenes Dillion who remained the recipient of the proceeds.

Sometime between 1969 and 1971, Levenes Dillion gave plaintiff, Helen Larsen, power of attorney over her affairs. At that

time, plaintiff contacted appellant concerning his lease on the home. Appellant, apparently concerned about the ownership of the property, contacted an attorney in Yankton to make inquiry concerning the status of the deed. Letters written by Mr. Dwyer in response to the two inquiries in 1971 reflected that he found a deed executed by Levenes Dillion to Margaret D. Dixon and William D. Morrison dated January 2, 1963. Pursuant to another inquiry regarding any instructions relative to the filing, Mr. Dwyer's letter stated that he did not have any instructions relative to the filing and, due to the fact that it was made so long ago, he could not remember under what conditions it was left in his possession. It was his opinion, however, that it was left with him for recording upon the death of Levenes Dillion, but he honestly could not remember. It is noteworthy that appellant did not make inquiry to Levenes Dillion about the deed, even though she was competent to answer his questions at that time.

No action was taken in 1971 concerning the deed; it was not until plaintiff sought to sell this property in August, 1978, that appellant asserted his claim to the property. The deed was never recorded and has remained in the files of Harold Dwyer. John S. DeVany, who succeeded to the law practice of Harold Dwyer, located the deed in either the file of Levenes Dillion or Margaret Dixon, but could not recall which. Appellant testified, however, that Mr. DeVany had earlier stated that the deed was found in the file of Margaret Dixon, one of the grantees. The court, based upon its findings of fact and conclusions of law, adjudged that the deed was testamentary in nature and that there was no delivery at the time it was drawn; therefore, the title to the property in question rested with Levenes Dillion.

## ISSUE

Did the trial court err in finding that at the time the deed was drawn there was no effective delivery and that it was a testamentary conveyance?

## DECISION

SDCL 43–4–7 provides that: "A grant takes effect so as to vest the interest intended to be transferred only upon its delivery by the grantor. It is a well settled precept that in order to constitute a delivery, the grantor must part with the legal possession of the deed and of all right to retain it. *Huber v. Backus*, 79 S.D. 342, 112 N.W.2d 238 (1961); *Cassidy v. Holland*, 27 S.D. 287, 130 N.W. 771 (1911). To make the delivery valid, it must be manifest that the grantor intended the grantee to become possessed of the estate. *Lower v. Lower*, 47 S.D. 458, 199 N.W. 199 (1924). If it is executed only for delivery after the grantor's death, it is testamentary notwithstanding that it is denominated a deed, and becomes valid only when it is executed in the form or manner provided by law for the execution of a last will and testament. *Spitzer v. Spitzer*, 84 S.D. 147, 168 N.W.2d 718 (1969); *McGillivray v. Wipf*, 64 S.D. 367, 266 N.W. 724 (1936). Whether there was a delivery is a question of intent to be found from all the facts surrounding the transaction. *Huber v. Backus*, supra, and *McKenzie v. Birkholtz*, 74 S.D. 173, 50 N.W.2d 95 (1951).

In reviewing the record, we are unable to say that the evidence clearly preponderates against the trial court's finding that the deed was testamentary in nature and that there was no delivery made at the time it was drawn. The evidence fails to demonstrate that Levenes Dillion ever parted with legal possession of the deed and of all right to retain or control it. After the deed was executed, it was left with attorney Dwyer who was retained by the grantor to draw the deed and it has remained in his successor's closed files to this date. Appellant was the only person available to testify regarding the conversation which took place during the execution of the deed in Harold Dwyer's office. There is nothing in the record, however, to show that Dwyer was authorized by the grantor to make delivery to the grantee. In fact, Dwyer's letter written in March of 1971, pursuant to appellant's inquiry, revealed that he was

unsure of his instructions concerning the deed but believed the deed had been left with him for recording upon the death of Levenes Dillion. It appears that any right or interest to the property recited in the deed was postponed until after the death of the grantor, and therefore, Levenes Dillion was empowered to revoke it at any time. When a grantor controls a deed and may recall it, there is no delivery even though he is parted with its immediate possession. *Kula v. Kula*, 149 Neb. 347, 31 N.W.2d 96 (1948).

■ Appellant places great significance on attorney John DeVany's statement that he found the deed in either Mrs. Dillion's file or in one belonging to that of Margaret Dixon. It is important to note that on June 26, 1968, Margaret Dixon, under power of attorney from Levenes Dillion, acted as the grantor's agent in leasing the property to appellant. Given the fact that an agency relationship existed between Levenes Dillion and Margaret Dixon, the location of the deed has little bearing on whether delivery had been effectuated. Levenes Dillion would nonetheless retain constructive possession of the deed.

■ Appellant Morrison premises his claims of possession and of valid delivery of the deed upon the fact that the deed was handed to him while in Mr. Dwyer's office. He also attaches great significance to the uncorroborated claim that he requested the deed be left with Mr. Dwyer for safekeeping. Given the fact that the deed may have passed through appellant's hands in Mr. Dwyer's office, the mere manual transfer of the deed does not amount to a delivery where it is shown to be the intention of the parties that the deed is not to become operative immediately, and where such intention is evidenced by continued acts of ownership and operation by the grantor. *Seibert v. Seibert*, 379 Ill. 470, 41 N.E.2d 544 (1941). *See also Kenobbie v. Krause*, 67 S.D. 331, 292 N.W. 873 (1940). It is clear from the record that Levenes Dillion exercised the same acts of ownership as she did after the execution of the deed. She continued to pay all the bills, taxes, and repairs on the property in question. Furthermore, appellant neither had exclusive possession nor exercised dominion over the deed. At the time he began having doubts over the validity of the deed, appellant made an inquiry through another attorney. These acts are inconsistent with appellant's claim that Dwyer was his agent for the safekeeping of the deed. Although SDCL 43–4–7 provides, "[a] grant duly executed is presumed to have been delivered at its date," this presumption of delivery is not extended to cases where the grantor still retains possession of the deed. *Cassidy v. Holland*, supra. Levenes Dillion was in constructive, if not actual, possession of the deed as the deed remained in the files of the attorney hired by her to draw the deed in question. The trial court properly concluded that Mrs. Dillion did not part with control of the deed.

In considering all the facts and surrounding circumstances of the transaction, it does not appear that the grantor intended to effect a present, immediate conveyance of the property in question. In order to make the delivery valid, it must be manifest that the grantor intended the grantee to become possessed of the estate. *Lower v. Lower*, supra. Appellant's own testimony supports the trial court's conclusion that the parties intended it to take effect upon the death of Levenes Dillion. During both direct and cross-examination appellant stated: "[S]he wanted to be sure that I had a roof over my head in later years. . . . It was understood that she held on to it until she died."

■ In determining whether a writing is a deed or a testamentary conveyance, the controlling question and the ultimate object of inquiry is: "What was the intent of the maker?" *Trumbauer v. Rust*, 36 S.D. 301, 154 N.W. 801 (1915). In *Trumbauer* the court stated that:

If it [the conveyance] was to postpone title and enjoyment until after his death, the writing is not a deed; if it was to confer title but to postpone the enjoyment thereof, it is a deed. *Id.* at 304, 154 N.W. at 802.

Therefore, we must consider all the facts and surrounding circumstances tending to reveal the intent of the maker including the wording of the particular writing and the declarations of the maker at the time of executing the writing. Appellant contends that the writing was a present conveyance of a future estate, reserving to the grantor a life estate and right of possession. The instrument in question, however, contains no provision reserving a life estate in the grantor. *Cf. Trumbauer v. Rust*, supra. The drafter of this deed was an experienced and knowledgeable attorney; it must be assumed it was drafted in accordance with the grantor's express wishes. Appellant's own testimony that the property was still in Levenes Dillion's name and that she held onto it while she was still alive, militates against the contention that title was conveyed.

A reservation of a life estate cannot be implied in this case. Appellant's reliance on *Huber v. Backus*, supra, is factually distinguishable from the case at bar. In *Huber* the grantor continued to collect rent from the property, but he relinquished the right to control the deed. In fact, when the grantor subsequently wished to sell the real estate to another party, a reconveyance was required from the former grantee to the grantor. Also, after executing the deed, the grantor in *Huber* told friends that he had already given the property to the grantee and that prospective buyers could see the grantee about the sale of the property. These acts by the parties in *Huber* indicated an intent to pass ownership of the land, but the grantee's enjoyment of the income was postponed until a future date. None of these actions indicating an intent to reserve a life estate are present here. Following execution of the deed, Levenes Dillion never spoke to anyone of the previous, effective conveyance of the property. The warranty deed executed on January 2, 1963, was never recorded. Plaintiff's ward, Levenes Dillion, was at all times referred to in this action as the record owner of the real estate. Appellant never claimed any right to control the property for his own use nor did he assert any interest in the real estate during the fifteen years following the execution of the deed.

In view of the facts and circumstances surrounding the transaction, it is apparent that there was to be no delivery of the instrument during the lifetime of Levenes Dillion. The writing in question thus passed no present interest or right and was testamentary in nature. We have considered appellant's contentions that the trial court erred in certain evidentiary rulings and we find them to be without merit.

Accordingly, the judgment is affirmed.

WOLLMAN, C. J., and DUNN and MORGAN, JJ., concur.

FOSHEIM, J., concurs specially.

FOSHEIM, Justice (concurring specially).

In my opinion, the facts in this case distinguish it from *Nelson v. Nelson*, 293 N.W. 2d 463 (S.D.1980). Here the deed contained no reservation of a life estate in the grantor and her continued acts evidencing ownership could therefore be consistent only with a position of passing no present interest or right. The instrument was accordingly an attempted testamentary disposition notwithstanding, it was denominated a deed and was a deed in form. *Trumbauer v. Rust*, 36 S.D. 301, 154 N.W. 801 (1915). Likewise, if it was in fact not intended as a deed, delivery will not thereby make it a deed. *Kenobbie v. Krause*, 67 S.D. 331, 292 N.W. 873 (1940). A grant cannot be delivered to the grantee conditionally. It must be absolute. SDCL 43-4-8.

We cannot say in this case that the evidence clearly preponderates against the finding of the trial court as to the intent of the grantor. *Kenobbie v. Krause*, supra; *Stalting v. Stalting*, 52 S.D. 309, 217 N.W. 386 (1927).