**SUPREME COURT OF ERRORS, JUNE, 1795.**

HOLMES ET AL. V. WILLIAMS ET AL.

ERROR to reverse a judgment of the Superior Court holden at New London on the fourth Tuesday of September A. D. 1791, affirming the decree of a Court of Probate at New London, holden on the 7th day of February 1791. Judgment of the Superior Court reversed, and the reasons for reversal, and the state of the case, as follows.

William Wheeler the elder being seized in fee of certain lands and tenements, on the 13th of August in A. D. 1747, devised the same in the following words, viz. To my grandson William Wheeler his heirs and assigns forever, on condition, he pay to my granddaughter Hannah Wheeler £200 old tenor bills, when he arrives at lawful age; but in case said William dies without issue lawfully begotten of his body, then I give said lands and house to my six sons-in-law and my granddaughter Hannah Wheeler, to be equally divided between them. It ought to be noted also, that in other parts of the will he devises lands to four of his sons-in-law mentioning them by name, and their wives, to hold in some instances to the son-in-law and his wife their heirs and assigns; and in others to the son-in-law his heirs and assigns forever. The testator died soon after making the will aforesaid, and the same was duly proved and approved, and William Wheeler the younger went into possession of the lands devised to him, and when he arrived at full age he paid the legacy to said Hannah; and for a valuable consideration sold said lands to William Williams and Nathan Crary, two of said sons-in-law, who went into possession of the same. William Wheeler the younger after having thus sold the lands died without leaving any issue, and without ever having had any issue; four of the six sons-in-law, to whom said lands were given after the death of William Wheeler the younger, as also Hannah Wheeler died before him: And the plaintiffs in error being heirs of those deceased sons-in-law, as well as of William Wheeler the elder, moved

the aforesaid Court of Probate for a distribution of these lands as parts of the estate of William Wheeler the elder, according to his will. The Court of Probate negatived the motion; and they appealed to the Superior Court, and the Superior Court affirmed the decree of the Court of Probate as mentioned above. The defendants in error are the two surviving sons-in-law, and the purchasers under William the younger; all the above facts appear, and the reasons given for the appeal and the pleadings.

The question before the court involves three points — 1st. Whether the limitation to the sons-in-law, and to Hannah Wheeler be in point of law good; or whether it be not too remote being to take effect after the death of William the younger without issue of his body, and therefore not good. 2d. Whether the sale of these lands by William Wheeler the younger will prevent the limitation from taking effect? 3d. What kind of estate (if any) had the sons-in-law and Hannah Wheeler in these lands by virtue of the limitation in said will, that is to say, whether the limitation over to them was as an estate for life or in fee?

It is agreed on all hands if the testator meant and it be the fair construction of the words he made use of, that the sons-in-law should have the estate, after an indefinite failure of issue of William the younger that the limitation of them is void. Such a limitation would tend to create a perpetuity, and in point of law would be; and in point of sound reason ought to be void: But if it be his meaning, and be also the construction of his words, that the limitation should take effect in case William Wheeler the younger should die leaving no issue, at the time of his death; under such circumstances the limitation by the laws of England would be good; and there can be no reason given why it should not be good in this state; that this is the grammatical construction of the words in the will cannot be doubted; a legal construction however is contended for in contradistinction to a grammatical one, viz. that a dying without issue, means not, leaving no issue at the time of his death; but means a failure of issue at any time, be it ever so

remote after the death: Agreeably to this construction was determined the case of Dormer v. Beauclerk, 2 Atkins, 308; and the case of Saltem v. Saltem, in 2 Atkins, 376; case of the Attorney-General v. Hind, 1 Brown, 170; and the case of Bigose v. Rinsley, 1 Brown, 178. And in giving his opinion in the last case Lord Thurlow says, to call a dying without leaving issue, the natural sense of dying without issue, is against all the cases; and yet the same Lord Thurlow says in giving the same opinion, that the grammatical construction of the words, dying without issue, is a dying without issue living at the time of his death, and that is the sense in general of those who use the words. And in giving his opinion in the case of the Attorney-General against Hind, he says, alluding to the construction he thought himself bound to put upon the words dying without issue or without heirs — "I am sorry the judges have thought themselves bound to construe wills contrary to their own opinion of the intent; the words if construed here otherwise than they have usually been, would overturn the rules of construction, though not the rules of law; if they have been always held to mean a distant dying without issue and it should now be held otherwise, it will shake the rules of property," etc. Lord Hardwick also in Dormer v. Beauclerk, says, "There was no doubt about the intention of the testator, but thought himself bound to make a decree contrary to that intention, because the legal import of words is different from a natural one."

In 1 Salk. 225, where the words of the will were to B. and the heirs of his body, and if B. should die without issue living, then to C. the limitation was holden to be good: In 1 Eqt. Abridg. where the words were, not having issue of the body, then living, then to D. to go over to D. for the residue of the term, this limitation to D. was holden to be good: In 3 Atk. 282, the testator willed and devised, if he should leave no legitimate son or daughter, who should leave any child behind them, that C. should have the estate both real and per-

sonal, etc. and the limitation to C. was decreed to be good. It is said by Lord Harcourt in 1 Peere Williams, 199, (though it is an obiter opinion) that a dying without issue shall be taken according to common parlance, viz. Issue living at the death.

"On a devise of a term for years to a son by name Henry for his life and no longer, and after his death, to such of the issue of the said Henry as Henry by his will should appoint; and in case Henry should die without issue, then to his brother Albenus for the residue of the time"— it was determined by Lord Chancellor Parker in 1 Peere Williams, 432, that the devise over to Albenus was good, and that the words dying without issue, or should die without issue should be taken in the vulgar sense; he observes however, "That there was a great diversity betwixt a devise of a freehold for life, to A. and if A. dies without issue then to B. and a devise of a term in the same words, because the words (if A. dies without issue) in case of an inheritance, are inserted in favor of the issue, and to let in the issue, after the death of the father; but in case of a term, these words cannot have such effect, for the father takes the whole, which on his death will not go to his issue, but will belong to the executors." The same observation he also makes afterwards in page 667 of the same book in giving his opinion in the cause Target v. Gaunt — it was determined in the case of Hughes v. Sayer, in 1 Peere Williams, 534, where C. having two nephews A. and B. devised the surplus of his personal estate to them, " and if either of them should die without children, then to the survivor;" that dying without children then living, because the immediate limitation over was to the surviving devisee. So in chancery proceeding 528, where A. devised portions to his four children, payable at their respective ages of twenty-one or marriage, and in case any of them should die before the time of payment or without issue, then his or their portion to go to the survivor or survivors, and his heirs; the same construction was given to the words dying without issue. In the 1 Peere Williams, 563, where the

testator gave his personal estate to his wife, and made her executrix, provided, that if she should die without issue by the testator, then after her decease, a remainder over, the remainder over was held to be good. In 3 Peere Williams, 258, where the words " without leaving issue," were made use of: In 2 Atk. 642, where the expressions were, leaving no heirs of his body: In 1 Peere Williams, 664, where the expressions were, leave no issue of their respective bodies; and in 3 Durn. 143, where the expressions were, leaving no issue behind him: In all these cases the words were understood according to their natural import, and the remainders over were held to be good, and those both in real and personal estates.

The case is stated in Fearne on Remainders, page 368, and is as follows; " W. C. left and bequeathed unto his daughter and only child, all his worldly substance, lands, stock, and debts, and household goods, provided she married by the consent of his executors therein mentioned: But in case she married without the consent of his executors, she was to have only twenty cows and a horse for her whole fortune; and after naming A. and B. his executors, he appointed that in case his said daughter should die without issue, all his substance should return back to his executors, to be distributed, as he should thereafter direct. And lastly, in case his daughter should marry without consent or die without issue, he appointed that all his said substance, etc. should return back to his executors, to be by them distributed in manner following, viz. to his nephew J. D. £100; to H. G. £50; to each of his executors aforesaid £50; to his daughter twenty cows and a horse only; and the remainder to be equally divided among the children of his sister E. F.

" The question was — Whether the limitation over of the personal estate after the death of the testator's daughter without issue, was good.

" The Court of Chancery in Ireland held it was; and their decree was confirmed by the House of Lords here, upon the

opinion of the judges, that the bequest over was to take effect on the death of the daughter, without issue then living."

Thus stands the case as decided in Westminster Hall. It is very probable, if the question was to come up now as a new one there, the judges would determine according to the natural and grammatical construction of the words: In this state where the policy is not to force a construction to favor heirs, there can be no doubt, what the true construction, of dying without issue lawfully begotten of his body ought to be; the sense is, if there be no issue living, at the time of his death, the same construction ought to be put on the words here, as was formerly in Great Britain put on them, when applied to personal and household estate.

As to the second question, it is very clear that the testator did not intend, the sons-in-law should be defeated of their interest by any act of William Wheeler the younger, in case of his dying without issue; it would be very unreasonable that they should be so defeated, and on the foot of reason only we may say it is impossible, to be sure, if any interest had vested in them at the time when William the younger sold the estate. And that an interest, and a descendible one to, had vested in them, is clear from the case of Marks against Marks, in 1 Str. 199, as well as from other authorities. The case of Pells v. Brown in Cro. James, 590, is decisive, that an executory devise cannot be prevented or destroyed by any alteration or sale of the estate out of which or after which it is limited; Fearne on Remainders, page 306, also lays down the same principle: And we are of opinion that the sons-in-law took by way of executory devise; that is, that William Wheeler the younger was seized in fee of this estate, of course the limitation to the sons-in-law could be good, but by executory devise: Had William the younger been tenant in tail, there could have been no dispute about the meaning of the words, dying *without issue of the body*, because in such case a limitation over would have been good after an indefinite failure of issue: But suppose he was tenant in tail he could not defeat the remainderman by executing a common deed of bargain and sale

of the lands, but the conveyance must be by fine, or by suffering a common recovery.

It is now to be considered whether the sons-in-law took an estate in fee, or only an estate for life; it being once determined that the technical words necessary to convey a fee in a deed, are not necessary to convey a fee in a will, but that the intention of the testator is principally to be regarded as the rule of construction; there can be no doubt but the sons-in-law as well as Hannah Wheeler took a fee a descendible interest, and which their heirs would be entitled to take, if they (the sons-in-law or said Hannah Wheeler) should not be alive, at the death of the grandson without issue of his body: If the testator intended they should take but an estate for life; Why did he not say so, in so many words? Why is he totally silent with respect to this estate, after the death of the tenants for life? If they are so to be construed; Why doth the testator say that this estate should be equally divided among the sons-in-law and said Hannah Wheeler, if they each were to have but a life estate? Because if one or more of the devisees should die before William the grandson, it could not be equally divided between them as some could not take. Not to mention the absurdity of giving a life estate to these uncles of the grandson, to take effect after the death of the grandson, who probably would outlive them: It may be very doubtful whether the modes of expression, accompanied with the other circumstances in this case, would not be sufficient to give the sons-in-law and the granddaughter a descendible interest even in Great Britain, where the judges are so hedged in, and fettered with technical rules, as to be obliged in some instances on questions of this sort, to decide contrary to the intent of the testator, and to what they think is sound sense; but let us see what their decisions have been.

The general rule there is — That it is not necessary, in order to convey a fee by a devise, that the words " to him and his heirs forever," should be made use of, as in a deed; but a

devise to a man and his assigns, to a man and his children, to a man and his issue, will create a fee; it is said however by Lord Chief Justice DeGrey, in 3 Wilson, 418, that if a testator devises his lands in several parcels to divers persons, without any words denoting a limitation, the devisees will have but an estate for life. It is also said by Lord Mansfield, in Doug. 734, that a devise of all a man's estate, the same lying at a particular place, will carry but an estate for life; but that a devise of all a man's estate, without any words of limitation at all, if it be not mentioned where it lies, will carry a fee.

What difference there is in these several instances put, it is difficult to ascertain; and why in each case a fee would not pass, no solid reason can be given: And Lord Mansfield in giving his opinion in the case in Doug. above cited, plainly showed what rule of construction he thought ought to have been adopted, had it been a new question; and of course how he would have decided the question in this state; his words are, " I verily believe, that in almost every case, where by law a general devise of lands is reduced to an estate for life, the intent of the testator is thwarted; for ordinary people do not distinguish between real and personal property. The rule of law however is established and certain, that express limitation or words tantamount are necessary to pass an inheritance; all my estate, or all my interest, will do; but all my lands lying in such a place, is not sufficient; such words are considered merely as descriptive of the local situation, and only carry an estate for life; nor are words tending to disinherit the heir-at-law, sufficient to prevent his taking, unless the estate is given to somebody else."

In personal estates common sense prevails as to the construction of a bequest; in real estates it does not, and principally because it is the policy of Great Britain to keep estates in families and not to suffer the heir to be disinherited, as is said by Lord Mansfield, but by express limitation or words

tantamount; no such policy however obtains here; all the heirs are as much entitled to the real as the personal estate, but in Great Britain, if a man in his will express himself thus, "I give my houses to A. B. to pay my debts," those words carry a fee. So a devise to A. B. to sell, is a fee, or a devise of houses charged with debts, which takes money out of the pocket of the devisee, is a fee. So it is laid down by Lord Chief Justice DeGrey, in 3 Wilson, 418 — the following words were determined by three judges against Holt, Chief Justice, to carry a fee, as reported in 2 Lord Raymond, 832. "I give ratify and confirm to my son John Billings by such time and term for years, which now is or at any time after my decease may happen to be in my power to dispose of in whatsoever I hold by lease of J. N. and I. S. and also the house called the Bell Tavern, in St. Nicholas lane, together with the stable thereunto adjoining."

And Lord Chancellor Talbot, a man of excellent sense and a very sound lawyer, determined, that a fee was carried by a will worded thus, "As to my temporal estate with which it has pleased God to bless me, I dispose of the same; I will that my debts be paid," after which he disposed of several pecuniary and other personal legacies, gave four shillings per week to a relation for her life; then came these words " all the rest of my estate, goods and chattels whatsoever real and personal, I give to my beloved wife whom I make executrix " — the case is reported in 3 Peere Williams, 294-298; and the reporter says the Lord Chancellor with great clearness, decreed that all the real estate did well pass by the will, to the testator's wife and her heirs; then, on carefully attending to the authorities on this subject in Great Britain, and their applicability on this state, as well as to the plain construction of this will apart from all authorities, we have no doubt that the three propositions or questions before mentioned are with the plaintiffs in error, and therefore said judgment of the Superior Court ought to be reversed.