SMITH *v.* SMITH.

No. 6486. November 17, 1928.

*John R. Wilson,* for plaintiff in error.

*J. E. Drake* and *P. D. Rich,* contra.

Beck, P. J.   Victor H. Smith filed his petition against W. J. M. Smith, praying for specific performance, and that the defendant be required to make to the plaintiff a deed to forty acres of land described in the petition.   The petition contained two counts.   In the first count the plaintiff alleged a gift from the defendant, his father, and continuous possession for a period of more than seven years.   The second count alleged a contract and that the defendant had promised to execute to the plaintiff a deed to the premises, but had failed to do so; and that the title to the premises was in the defendant and was a cloud on the plaintiff's title.   The plain-

tiff prayed for specific performance and "such other and further relief as the facts, law, and equity may warrant." The defendant filed a plea denying the material allegations of the petition, and among other things alleged that he had executed to the plaintiff a deed to the premises on July 24, 1908, which deed was recorded on August 12, 1909, and in which the defendant reserved the right and authority to sell and dispose of the property at any time during his lifetime. Subsequently the defendant tendered an amendment to the plea, setting out certain amounts advanced by the defendant to the petitioner for material used on the premises, for taxes paid, and for other amounts paid to merchants for supplies and provisions furnished to the petitioner. A second amendment tendered set forth certain mutual set-offs of the defendant against the petitioner, which it was alleged were not barred by the statute of limitations. These amendments were disallowed, except for the purpose of illustrating the dealing between the father and son, and so far as they might throw light upon the question as to the alleged gift. The jury returned a verdict in favor of the plaintiff. The defendant made a motion for a new trial, which was overruled.

■ The majority of this court is of the opinion that the amendments referred to in the preceding statement should have been allowed, and that the court erred in sustaining the objection to them. This was an equitable petition brought against the defendant, and, under the rule that he who seeks equity must do equity, the court should have permitted the defendant to set up and establish by proof his claim for taxes paid on the place which the son claims had been given him by the defendant, and for material and supplies which had been furnished by the father, the defendant, to his son, the plaintiff. As against the suit brought by the plaintiff it may be that neither a technical plea of set-off nor one of recoupment would be allowed; but the plaintiff has seen fit to come into equity, and in that court the mutual demands of the plaintiff and defendant can be adjudicated. If the father paid taxes and furnished provisions to the son and furnished supplies and materials to be used in improvements on the place which petitioner claims was given him by his father, these matters can all be taken into account; and the father, if he establishes by evidence his allegations in regard to the payment of taxes, and pay-

ments made for supplies and material furnished, may have judgment against the plaintiff for those amounts. The son can not insist on specific performance in this case of a parol gift, without submitting himself to a court of equity, that claims of the defendant against him of the nature indicated above be adjudicated in the same action. Otherwise, if the son should prevail in the suit, he will have a judgment decreeing specific performance, and the father, who advanced money for him for the payment of taxes and for the other matters set forth in the amendment that was disallowed, will have to go into another court to establish his claim and secure a judgment. All these facts could have been settled in this one case, and should have been.

In his petition the plaintiff alleges that in the year 1915 the defendant gave to him the land in controversy, and that he went into possession and for ten years remained in quiet, adverse, open, and notorious possession of the land; that he cleared up and fenced a portion of the same, and made valuable improvements thereon, all of which was done with the knowledge and consent of the defendant; that "petitioner accepted the gift and went into possession of the premises under and by virtue of the gift, and the defendant, from the time stated above, acknowledged the ownership and dominion of the premises by petitioner." The defendant in his plea and answer denies that he made any parol gift to the petitioner in the year 1915, or at any other time, but avers that he executed a deed on July 24, 1908, conveying property to petitioner and Mrs. Elmina E. Comer and others, which deed, it is alleged, was duly executed and delivered on August 12, 1909; that "plaintiff accepted the land conveyed to him by this deed and went into possession of the same with the distinct understanding that the defendant reserved the power, right, and authority to sell the land at any time during his life, all of which was well known to Victor H. Smith [the plaintiff], and was a part of the consideration of his going into possession of the premises and his retention thereof." Further answering, the defendant says that "he has returned the premises for taxes each and every year since the plaintiff went into possession of the same, except two years, and defendant turned over to plaintiff the money with which to pay the taxes for the two years in which the plaintiff made the returns. The remaining years defendant not only returned the property for State and

county taxes, but paid the taxes himself on the premises, and has never recognized the plaintiff as being the owner of said property."

Upon the trial the plaintiff testified in part as follows: "I put the improvements on that property and commenced improving it in 1915, and there was nothing there in 1915 except the woods. I cleared the field and fenced it, built those houses there. I started in 1915, I think the latter part of June." This was followed by a statement that at the time just referred to, the plaintiff went to where his father was, that his father called to him, that he went and sat near his father, and his father said to him: "Well, Victor, I got 40 acres of land over yonder I have deeded to you, and I am now going to give it to you, and I want you to go over there and clear it up, fence it in, build you a house on it, and try to make something. No one can touch it with a ten-foot pole." Plaintiff testified, "That was the language he used; and when he stated that, I paused for a moment, and I replied to him by telling him that I would accept it. 'Now, son,' he says, 'quit running about and settle down.' I went over there the next day to commence work, took an ax, went over to the place, and stuck the ax in the ground and looked the situation over. I took up his proposition, cleared up a little place that day, and from then on claimed the place as my property. I afterwards talked to my father and made reference to it as my property. It was in the month of December, 1925, he denied the property was mine, and after I had made the improvements and had been living on it continuously all these years with my family. When he told me he had made a deed to me and would give it to me he did not show me the deed, and has never given me the deed. I have never seen the deed. He told me that night that he was going to give me this land and that he had made me a deed to it. He did not deliver the deed to me and has never delivered it to me, and told me nothing about the contents of the deed. That is all he said about the deed. He knew that I was clearing up the land and building the houses. At that time he was living a mile from the place. He never at any subsequent time called my attention to any deed with reservations in it. He taken dinner with me several times, and told me and my wife and my two boys—we were all together at the table—he was glad we were trying to do something, and that he had given me the place and he hoped I would do well; that he was trying to do

something for all his children. That was in 1925. He passed this place going to his store and farm, frequently stopping. I know why he became dissatisfied: on account of some of my family; wasn't nothing I had done. In 1925 when he tried to take the place away from me, I told him it was my place and he had given it to me; and I refused to surrender it to him. He then brought this suit. I had been living there at that time about 12 years when he wanted to take it back."

On cross-examination the plaintiff testified: "I don't remember my father telling me in the conversation that he had made a deed to this 40 acres which I could go to work on, but [that] he reserved the right to sell it at any time during his life. I don't recall that he told me of any reservation having been made. I don't recall that he made deed in 1908, while in Atlanta, and brought it back here and signed it and told me and the other children and that he was giving each one a certain piece of property and that mine was to be 40 acres. I don't remember talking to Charlie Smith and the others about the deed. Yes, sir, my father told me that afternoon, in the conversation at the store, the deed had been recorded, and that I was one of the grantees in the deed. He said that he gave me the 40 acres. There was no reservations mentioned in the conversation. He did tell me that he had the deed recorded, and I knew that the deed had been recorded in the clerk's office of this county. I never at any moment in my life saw the deed, and never went to look at it. My father gave me no other land in that deed that I know of. I had no agreement with my father afterwards when he claimed the land and in which I agreed to accept $300."

The defendant was introduced as a witness, and testified in part as follows: "I told him [the plaintiff] that I had allotted that to him at my death, provided I don't sell it; that I had retained that right in the deed that I had made for all the children. . . I never have told anybody that it was his place, but I told them that I had allotted it to him provided that I didn't sell it under the deed. . . All I ever said to anybody about it was this, that I had allotted it to him in the deed with the understanding that I had the right reserved in the deed to sell it any time I saw fit during my life; and the deed will show for itself; and I told him what the terms of this deed was when he went there; he knew

it before then, and every one of them knew it. This deed was put on record before he went in possession, or mighty soon afterwards. I told him about it, told him what was in it. My wife was present; no other person present, just us three. I have never admitted that he was the owner of the property. I have claimed it all the time and claim it now. I have paid the taxes on it because it was mine."

The deed referred to, dated July 24, 1908, recorded on August 12, 1909, was a warranty deed from W. J. M. Smith to Victor H. Smith and others, the consideration being five dollars and natural love and affection which the grantor bears to the grantees named therein, his wife, children, and a grandchild. In the property conveyed by the deed to Victor H. Smith, his heirs and assigns, were 40 acres of the southeast corner of land lot 358 in the 27th district of Decatur County; also three twenty-fifths undivided interest in the remainder, after the termination of the life-estate of the grantor's wife in land lot No. 359 in the same district. The deed, after reciting the names of the grantor and grantees, and the property described, contained the following reservation at the conclusion: "It is expressly understood and agreed by and between the parties to this indenture that said party of the first part shall have the full power, right, and authority, without any order of any court, to sell and dispose of any or all of the foregoing tracts of land at public or private sale or otherwise, and to use, enjoy, and dispose of the proceeds arising from such sale or sales as he may think best; and said party of the first part hereby expressly reserves unto himself said power to dispose of the fee-simple estate in each and all of the foregoing tracts or parcels of land; and he hereby gives, grants, conveys, and sells to said parties of the second part the above-described tracts of land, subject to this right and power." This deed had the usual attestation clause with the signatures of two witnesses. Its introduction in evidence was objected to by the plaintiff; and the court ruled that it was testamentary in its character, and was not a deed, but permitted it to go to in evidence, "to be considered by the jury for the sole purpose of illustrating whether or not there was a gift of the premises in dispute from the father to the son."

We are of the opinion that the instrument in question was a deed, and that it was not rendered testamentary in character by

the reservation just quoted, that is, to sell and dispose of the property and to use and enjoy the proceeds arising from such sale. "No particular form of words is necessary to constitute a will; and in all cases to determine the character of an instrument, whether it is testamentary or not, the test is the intention of the maker, from the whole instrument, read in the light of the surrounding circumstances. If such intention be to convey a present estate, though the possession be postponed until after his death, the instrument is a deed; if the intention be to convey an interest accruing and having effect only after his death, it is a will." Civil Code, § 3828. Construing this instrument in view of all the terms thereof, it is apparent that there is "an intention to convey a present estate." It is true that it is a defeasible estate; that is, the power to sell the fee simple in the property is reserved there; but that does not make the paper testamentary in character. Such a reservation does not any more put it in the power of the grantor to destroy the estate granted than to revoke in a deed,— that is, the power to altogether revoke the estate granted; and it has been held that this latter power does not render a deed void as such. "Deeds expressly reserving therein a right to revoke are not infrequently met with. Considered in one view, an ordinary mortgage is a deed of this character. Some question has arisen as to the precise nature of these deeds, and they can not be clearly defined as creating either estates on condition or as reserving an estate in the grantor. The cases are, however, in accord that such a deed is valid. The reservation is not void as against public policy, nor as being repugnant to the grant. It has been held that such a deed creates an estate on condition subsequent. But it can not be defeated on the theory that it is a condition subsequent void because impossible of performance in the precise method stated in the deed." 8 R. C. L. 1120, and cit. Inasmuch as the instrument in question was a deed, it should have been admitted as such for the consideration of the jury; and in the light of all the other facts in the case, the jury should have said whether or not the son, the plaintiff, went into possession under the terms and conditions of that deed, and not under the parol gift.

▆ The rulings in headnotes 3, 4, and 5 require no elaboration.

*Judgment reversed. All the Justices concur, except as follows.*

BECK, P. J. I dissent from the ruling in the first division of the decision. I am of the opinion that the amendments to the plea and answer amount to nothing more than a plea of set-off. They do not grow out of the contract which the plaintiff is seeking to have enforced by the decree for specific performance. They are not germane to that suit. And the fact that this is a suit in equity does not give to the defendant the right to set up the claims made in the amendments to his plea and answer, and to have his demands adjudicated in a court of equity in a suit brought for specific performance merely. I am authorized to say that Justice Hines concurs with me in this dissent.