St. Louis County National Bank, a National Banking Association, Testamentary Trustee Under the Last Will and Testament of Paul A. Kessler, Deceased, Plaintiff (Respondent), v. Verna C. Fielder, Defendant (Appellant), No. 43270—260 S. W. (2d) 483.

Court en Banc, July 13, 1953.

Rehearing Denied, September 14, 1953.

*R. Forder Buckley* and *Edmund C. Albrecht* for appellant.

*Kerth & Schreiber* for respondent.

*D. Calhoun Jones* amicus curiae.

HYDE, J.—Action to determine title to real estate. Plaintiff claims title as testamentary trustee under the will of Paul A.

Kessler, deceased, executed September 17, 1947. Defendant claims under a quitclaim deed, executed by Kessler, June 2, 1949, and recorded on that date. Kessler died July 24, 1950. The question for decision is whether the deed is void as an invalid testamentary disposition as contended by plaintiff. The trial court found the deed void, adjudged title in plaintiff and defendant has appealed.

The case was tried on an agreed statement of facts. Kessler's will left all his estate, real and personal, to plaintiff as trustee for his daughter and three grandchildren, the corpus to go to the grandchildren at the daughter's death. The deed conveyed Kessler's residence to defendant. It was in regular form but contained the following reservation: "The said party of the first part hereby reserves a Life Estate in and to said property, with power to sell, rent, lease, mortgage or otherwise dispose of said property during his natural lifetime." Kessler continued to reside in the property until his death, and at no time did he sell, rent, lease, mortgage or otherwise dispose of said property during his natural lifetime or attempt to do so.

Plaintiff contends that "a deed, in order to convey, must vest in the grantee a present irrevocable interest"; that "retention of power to sell, mortgage or otherwise dispose of property during lifetime, by grantor, in deed purporting to convey an estate to commence in the future prevents an immediate and irrevocable interest from being vested in grantee because the retention of such powers is equivalent to the power to revoke the deed"; that the reservation of the power to revoke shows grantor's intention to be that no estate is to pass to grantee until the death of the grantor; and that this reservation makes the deed testamentary in character. Plaintiff relies mainly on Goins v. Melton, 343 Mo. 413, 121 S. W. (2d) 821 and cases cited therein.

However, the reservation in the deed herein involved says nothing about postponing the passing or vesting of title until the death of the grantor, as is true in every Missouri case we have found holding a deed to be testamentary. (See cases cited in article on Testamentary Character of Deeds in Missouri, Ottman, 5 Mo. Law Rev. 350; see also Deed or Will, Eckhardt, 15 Mo. Law Rev. 383.) Instead, this deed unconditionally conveys the title immediately, stating "neither the said party of the first part, nor his heirs * * * will hereafter claim or demand any right or title to the aforesaid premises." It makes a clear and proper reservation of a life estate and does also reserve the right to sell, mortgage or otherwise dispose of the property during the grantor's lifetime, which plaintiff correctly says is in effect a reservation of the power to revoke to be exercised in a particular manner. (See 3 Tiffany Real Property 14, Sec. 681.) Of course, the right to rent or lease is not inconsistent with the life estate; and none of these provisions prevent the immediate vesting of title in the grantee of the remainder in fee. While the grantee's estate might later be defeated by exercise of the power that would only make

it a defeasible fee but nevertheless a vested estate. (See 31 C.J.S. 15, Sec. 5; 133 Am. Jur. 544, Sec. 88.) The deed in the Goins case, in addition to the retention of the right to sell during the grantor's lifetime, stated: *"At his death the title* to all, or whatever part thereof remains unsold, *to pass to and vest in the grantee together with all his personal property and belongings."* Providing for personal property to thus vest in the grantee at the same time as the title to the land (at the grantor's death) was an added indication of the grantor's intention to make a testamentary disposition not found in many of the cases. This intention, as therein stated, was to be "gathered from the four corners of the instrument." (For criticism of the Goins case see Work of Missouri Supreme Court—1938, Property, Eckhardt, 4 Mo. Law Rev. 419.) There is nothing like the above quoted provision of the Goins case deed in this case. Indeed the grantor had already made his testamentary disposition by his previously executed will. (For a deed more like the Goins case deed see Wren v. Coffey, (Tex.Civ.App.) 26 S. W. 142, where the language was "all our right, title and interest in and to our homestead * * * should we not sell or dispose of the same before death." While this did not prohibit the vesting of title as specifically as did the Goins case deed, the Court held it testamentary, saying it was "a declaration of intention that the conveyance should not have the effect to divest title out of the makers, and invest it in the son, during the lifetime of such makers.") In this case, there is only the reservation of a life estate and a power to revoke during the grantor's lifetime. There is no language indicating an intention to postpone the vesting of the remainder in fee; but instead this deed affirmatively provides for the immediate vesting of title.

For the reasons hereinafter stated, we are convinced that a grantor has the right to reserve the power to revoke and that such a reservation alone does not make a deed testamentary. Insofar as Goins v. Melton indicates this reservation alone to be a reason for declaring a deed testamentary, it should be no longer followed. In fact, it would be more logical to hold the reservation void as repugnant to the grant (see 6 Thompson on Real Property 698, Sec. 3471) and thus leave the conveyance absolute, than it would be to hold that such a reservation makes the deed testamentary. That was the result reached by the Supreme Court of Kansas in Newell v. McMillan, 30 Pac. (2d) 126 where a deed, reserving a life estate to the grantors, provided "the right to mortgage, sell or * * * dispose of the within described real estate is hereby reserved by the grantors, until said grantee shall have attained the age of forty years." The Court held this reservation was a nullity and did not defeat the conveyance of the fee to the grantee.

Apparently that was what the early common law did before the Statute of Uses (see Farwell on Powers, p. 2) for reasons stated by

the Supreme Court of California, in Tennant et al. v. John Tennant Memorial Home, 140 Pac. 242, l.c. 244, as follows: "Under the ancient common law, there was a rule to the effect that, where a transfer was made by feoffment and livery of seisin, any power of revocation reserved in the feoffment itself was void, on the ground that it was repugnant to the grant. The rule arose from the peculiar nature and purpose of the ceremony of livery of seisin, which was a necessary part of an alienation by feoffment. It consisted of a formal delivery of possession on the premises, symbolized by the manual delivery of a clod or piece of turf from the land, all of which was done in the presence of witnesses from the vicinage. The publicity was required because in those times there were no public records of conveyances and it was necessary in some way to preserve evidence of the transfer. For this reason the ceremony was required and the presence of witnesses was necessary. 4 Kent's Comm. 480. As this purpose would be defeated if the accompanying deed contained a reservation of power to revoke it, so that thereby the transfer could be absolutely defeated and a retransfer effected without such public ceremony or witnesses, the courts were forced to hold that such reservation in a feoffment was void. 1 Sugden on Powers, 2." While the Court, in the Tennant case, put the validity of the reservation of the right to revoke on statutory grounds, it also said: "Aside from the implied permission in the above section, * * * the reasonable conclusion would be that it was one of the inherent rights of every landowner to include such a reservation in a grant of his land." (See also Smith v. Smith, (Ga.) 145 S.E. 661; Ricketts v. Louisville, St. L. & T.Ry.Co., (Ky.) 15 S.W. 182; Bradish v. Sullivan, (R.I.) 173 Atl. 117; Stamper et al. v. Venable et al., (Tenn.) 97 S. W. 812; Jones v. Clifton, 101 U. S. 225.)

Obviously, therefore, whether the reserved power to revoke was valid or invalid, defendant would have title to the land herein involved. That is, if the grantor had a valid right to revoke, since he did not do so, defendant's title in fee is now absolute. On the other hand, if such a provision was invalid, because the grantor could not reserve such a power, then it was a nullity and his conveyance in fee was absolute. Likewise, it seems clear that neither the existence of a power to revoke nor its validity or invalidity has any bearing whatever on the question of testamentary character of a conveyance. Thus it requires something more than the reservation of a power to revoke alone to show an intention to make a testamentary disposition and there is nothing more in this case.

However, we think we should put our decision on the ground that the reservation of a power to revoke is valid because that is the modern trend. As pointed out in the Tennant case (140 Pac., l.c. 244), modern statutes for the transfer of lands by deed and the recording thereof have removed all the reasons on which the rule of the common

law (holding void the reservation of such a power) was founded. (See provisions of Chap. 59 and Chap 442, RSMo., V.A.M.S.) The modern conception of the right to acquire, possess and dispose of property (140 Pac., l.c. 245) "includes the right to dispose of it, or any part of it, and for that purpose to divide it in any possible manner, either by separating it into estates for successive periods or otherwise, and disposing of one or more of such estates. It also includes the right to impose upon the grant of such estates any reservations or conditions which the grantor may see fit to place in the grant. The only limitation upon these rights is that they must be exercised in a way not forbidden by law." The Kentucky case, Ricketts v. Louisville, St. L. & T. Ry. Co., 15 S. W. 182, answered the contention that the reservation of a power to revoke was against public policy, because it would enable the parties to defeat creditors, by saying: "The deed is notice to the creditors of the reserved power. If they trust the grantee upon the credit of the estate thus granted, they do so knowing the risk, because the deed gives them notice of it."

There is both good reason and authority for holding valid the reservation of a power to revoke. In 3 Tiffany, 3rd Ed. 12, Sec. 681, it is said: "A power of revocation in favor of the grantor himself is, even by the English authorities, perfectly valid in a conveyance by way either of bargain and sale or covenant to stand seised, though it would not have been valid at common law. In this country, as in England, a power of revocation is frequently inserted in a voluntary deed of trust and that there is no such power in a deed of that character has been regarded as an indication that the deed was obtained by undue influence. But such a power is valid in conveyances other than deeds of trust, and the reservation of such a power involves no inconsistency with the conveyance. It merely involves, as before remarked, the creation of an executory limitation in favor of the grantor himself." (See also 16 Am. Jur. 554, Sec. 204; 26 C.J.S. 448, Sec. 139; Annotations 11 A.L.R. 78 and 76 A.L.R. 648; 23 Minn. Law Rev. 683; 1 Devlin on Deeds, 3rd Ed., 546, Sec. 309a; also 2 Devlin 1589, Sec. 855; 1 Jones, Law of Real Property in Conveyancing 354, Sec. 666; 6 Thompson on Real Property 699, Sec. 3471; A.L.I. Restatement of Property, Sec. 24, comment c; Sec. 318, comment i.) We, therefore, hold that the deed to defendant herein created a defeasible fee subject to a life estate and, since the life estate has terminated and the power ▆▆▆ to revoke was not exercised, defendant is now the absolute owner.

The judgment is reversed and remanded with directions to enter judgment for defendant. All concur.