RENA L. DENNEN ET AL. *v.* MILDRED B. SEARLE

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, JS.

Argued October 13—decided December 19, 1961

*Frank A. Francis,* for the appellant (defendant).

*H. David Leventhal,* for the appellees (plaintiffs).

KING, J. On September 18, 1941, Mary A. Searle conveyed a tract of land in Windsor to her four children as tenants in common. These children comprised the three plaintiffs in this action, Rena L. (Searle) Dennen, Ralph B. Searle and Inez C. Searle, and also Elbert A. Searle, the deceased husband of Mildred Beebe Searle, the defendant in this action. Although Mary A. Searle reserved a life estate in herself, this need not be considered, since she apparently died prior to the execution of the instrument here in controversy.

On June 21, 1948, all four children joined in the execution of an unartfully drawn instrument which is styled "Agreement" and which purports to change the rights and interests of the cotenants inter se and to convey to others certain remainder interests in the land.[1] This instrument remained unrecorded until May 19, 1953. The defendant's husband died

---

[1] "AGREEMENT

THIS AGREEMENT, made and entered into this 21st day of June, 1948, by and between the following parties, Rena L. Dennen and Ralph B. Searle of the Town and County of Hartford, and State of Connecticut, and Inez C. Searle and Elbert A. Searle of the Town of Windsor in said county and state.

WHEREAS, the parties are the owners each of an undivided one-fourth (1/4) interest in a certain piece or parcel of land with the buildings thereon, situated on the south side of Pleasant Street in said Town of Windsor, known as No. 134 Pleasant Street, and being more particularly bounded and described as follows:

NORTH on Pleasant Street;

EAST on land now or formerly of Raymond D. Davis;

SOUTH on land now or formerly of Walter Wrisley; and

WEST on land now or formerly of Mack Wrisley, containing about one-half (1/2) acre more or less.

Being the same premises conveyed to the above four parties by deed from Mary A. Searle, dated September 18, 1941, and recorded in Windsor Land Records, Volume 118, Page 194.

NOW THEREFORE, in consideration of respective mutual promises of the said four parties, they agree as follows:

Said premises are to be held so that as each of said four parties shall die, the property shall vest in the survivors or survivor for

intestate on May 10, 1953, leaving, as those entitled to his estate, the defendant and her two children, Milton C. and Enid L. Searle. See General Statutes §§ 46-12, 45-274. The defendant knew nothing of the agreement until after her husband's death. The plaintiffs are in possession of the property and claim that their rights in it are those purportedly given them under the agreement. The defendant and her two children, at some undisclosed time after her husband's death but prior to February 19, 1955, executed a mutual distribution of the estate of her husband wherein all of his interest in the tract in question was set to her. No claim is made that this mutual distribution was executed prior to the effective date of the validating act hereinafter discussed.

The plaintiffs brought this action to quiet title under General Statutes § 47-31. They alleged possession in themselves and such other rights and in-

their respective lives exclusive of any of the heirs or representatives, husbands or wives, or children, of those deceased.

It is provided that if the said four parties at any time agree among themselves they may sell said premises and divide the proceeds. In like manner, if the survivors of said four parties agree among themselves they may sell said premises and divide the proceeds, and even the single survivor may sell said premises and retain the proceeds. In case the premises are sold as aforesaid, the survivors or survivor shall retain the proceeds without accounting to the husbands or wives, heirs or representatives of those of the four parties who may have died prior to the date of said sale.

If the premises are not sold at the date of the death of the last survivor, the premises shall be divided into four equal parts to go as follows:

1. On [sic] part to Wesley G. Dennen, to be his absolutely. If he be not living at that time, said part shall go to Milton C. Searle and Enid L. Searle to share equally.

2. One part to Declan D. Searle to be hers absolutely. If she be not living at that time, said part shall go to Milton C. Searle and Enid L. Searle to share equally.

3. If Inez C. Searle shall marry and be survived by her husband, one part shall go to said husband to be his absolutely. Otherwise,

terests in the property as were purportedly given them by the agreement, and also that the defendant claimed rights in the property adverse to them. They asked for a judgment determining her rights in the property and settling the title thereto. Since none of the remaindermen other than the defendant were made parties, their rights cannot be authoritatively determined, and we confine our consideration to the rights of the plaintiffs and the defendant in the property. The remaindermen should have been made parties, and we decide this case only because, as hereinafter appears, our construction of the agreement and our determination of the claims of law made in respect to it deprive the remaindermen

---

said part shall go to Milton C. Searle and Enid L. Searle to share equally.

4. One part to Milton C. Searle and Enid L. Searle to share equally to be theirs absolutely. If either Milton C. Searle or Enid L. Searle be not living at that time, said share shall go to the survivor to vest absolutely. This right of survivorship shall also apply to any amount to which said Milton C. Searle and Enid L. Searle are or may be entitled under provisions 1, 2, 3, above. In case both of said parts [sic] be not living at that time, the premises shall be divided among those entitled to the other parts.

If none of the aforesaid parties are living at that time, the premises shall go to the heirs and representatives of the makers of this instrument.

| Witnesses | | /s/ | Rena L. Dennen |
| /s/ | Charlotte E. Wile | /s/ | Elbert A. Searle |
| /s/ | Jeanette M. Gehret | /s/ | Inez C. Searle |
| | | /s/ | Ralph B. Searle |

STATE OF CONNECTICUT:
: ss.    Town of Hartford, June 21st, 1948
COUNTY OF HARTFORD:

Personally appeared Rena L. Dennen and Ralph B. Searle and Inez C. Searle and Elbert A. Searle, signers and sealers of the foregoing instrument and acknowledged the same to be their free act and deed before me.

[Notarial Seal]
/s/    A. M. Newcomer
Notary Public."

of nothing. See cases such as *Auchincloss* v. *City Bank Farmers Trust Co.,* 136 Conn. 266, 273, 70 A.2d 105.

The plaintiffs claim their interests in the property solely under and by virtue of the agreement, which they claim is a valid deed. The defendant asserts that the agreement is inoperative as a deed for a number of reasons. We first consider the claim that it is ineffective because it lacks a granting clause.

Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed or other conveyance, and that it "shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence." *Bartholomew* v. *Muzzy,* 61 Conn. 387, 393, 23 A. 604; *Luce* v. *Niantic Menhaden Oil & Guano Co.,* 86 Conn. 147, 149, 84 A. 521; *B. T. Harris Corporation* v. *Bulova,* 135 Conn. 356, 360, 64 A.2d 542. But "it is not enough that the parties had . . . [a particular] intention in fact [that is, as a unanimous state of mind], unless they have expressed it in some way in . . . [the] deed. The question is not what did the parties actually mean to say, but what is the meaning of what they have said." *Bartholomew* v. *Muzzy,* supra, 392; *Lampson Lumber Co.* v. *Caporale,* 140 Conn. 679, 682, 102 A.2d 875.

The granting clause does lack the customary operative words of conveyance such as "grant," "convey," "bargain" or "sell." In their place, it employs

the words, "Said premises are to be held . . . ," and, in granting the remainder interests, the words "to go," "to be his," and "shall go." To be effective to transfer an interest in realty, a deed necessarily must contain words of present grant. 16 Am. Jur. 469, § 49. But no particular verbal formula is required under our rule of construction as previously given. The quoted words express an intention to create among the original cotenants new incidents of survivorship and power of sale, and to grant remainder interests to other persons subject to defeasance upon the exercise of the power of sale. The instrument was not ineffective as a deed for lack of a sufficient granting clause. See cases such as *Shadden* v. *Zimmerlee*, 401 Ill. 118, 121, 81 N.E.2d 477; *Scott* v. *Brown*, 71 Colo. 275, 277, 206 P. 572; *Horton* v. *Murden*, 117 Ga. 72, 75, 43 S.E. 786; *Folk* v. *Varn*, 9 Rich. Eq. 303, 310 (S.C.).

The defendant further claims that the use of the word "or" in the phrase "in the survivors or survivor [of the original cotenants]," purporting to create a right of survivorship, was inadequate to accomplish that purpose and left the provision unintelligible. A cotenancy, without more, under our case law is a tenancy in common without right of survivorship. *Allen* v. *Almy*, 87 Conn. 517, 525, 89 A. 205. The parties to the instrument were, at the time of its execution, outright owners of the property as tenants in common. The expressed intent was to annex to the existing tenancy in common a right of survivorship, and this can be done, if the intent to do so is clearly expressed, even though under our law survivorship is not a necessary incident of either a joint tenancy or a tenancy in common. *New Haven Trolley & Bus Employees Credit Union* v. *Hill*, 145 Conn. 332, 334, 142 A.2d 730; *Hughes* v.

*Fairfield Lumber & Supply Co.,* 143 Conn. 427, 430, 123 A.2d 195. Since there were more than two tenants in common, there would initially be more than one survivor, but ultimately there would be only a single survivor. This accounts for the language "survivors or survivor." The use of the disjunctive "or" creates no uncertainty. The intent is obvious, and the defendant's claim is without merit.[2]

The defendant also claims that even if the instrument is a deed, it is inoperative for lack of any seal. Since there is no seal, the instrument fails to conform to the requirements as to the due execution of a conveyance of realty as set forth in General Statutes § 47-5, and on its face is inoperative as a deed. See *Savings Bank* v. *Davis,* 8 Conn. 191, 212; *Howe* v. *Keeler,* 27 Conn. 538, 555; *Bickart* v. *Sanditz,* 105 Conn. 766, 772, 136 A. 580. The plaintiffs claim that this defect was cured by subsequent validating acts. At the legislative sessions of 1949, 1951 and 1953, acts were enacted, in substantially identical language, validating properly recorded conveyances which were defective because of the absence of a seal.[3] None purported to validate a conveyance unless the conveyance had been recorded,

---

[2] The General Assembly in 1959 enacted legislation intended to clarify, simplify and liberalize the solution of certain problems involved in the coownership of real estate. This legislation is now to be found in §§ 47-14a to 47-14k of the General Statutes. See Stephenson, "Survivorship Deeds under the Statute," 34 Conn. B.J. 15, 32-37. No claim was made that this legislation applied to this case, which was instituted on March 24, 1960, nor were any facts proven indicating that the legislation was applicable. See General Statutes § 47-14k. Consequently, we were not called upon to resort to this liberalizing legislation in the disposition of this appeal.

[3] 25 Spec. Laws 1303, § 7 (approved July 26, 1949); 26 Spec. Laws 416, § 7 (approved July 9, 1951); 26 Spec. Laws 1035, § 7 (approved June 30, 1953).

nor in fact did it. *Mangusi* v. *Vigiliotti,* 104 Conn. 291, 295, 132 A. 464. The agreement was recorded May 19, 1953, so that it was validated, if validation was possible, by the 1953 validating act, which, as a special act, took effect upon its approval by the governor on June 30, 1953. General Statutes § 2-32. The defendant claims that the validating act could not affect her, since its operative date was subsequent to that of her husband's death and at the moment of his death his interest vested in those entitled to his intestate estate, that is, the defendant and his heirs at law, the two children. See General Statutes §§ 46-12, 45-274; *Parlato* v. *McCarthy,* 136 Conn. 126, 133, 69 A.2d 648; *O'Connor* v. *Chiascione,* 130 Conn. 304, 306, 33 A.2d 336; *Ziulkowski* v. *Kolodziej,* 119 Conn. 230, 233, 175 A. 780; 2 Locke & Kohn, Conn. Probate Practice § 266.

"What the Legislature may prescribe it may dispense with, and it may cure by subsequent act an irregularity of nonobservance of a requirement which it originally might have dispensed with, provided that vested rights have not intervened." *Sanger* v. *Bridgeport,* 124 Conn. 183, 186, 198 A. 746. Since the requirement of a seal was prescribed by statute, there can be no question of the right of the General Assembly to cure the defect arising from the omission of a seal, as between the parties to the instrument. Ibid. Thus, if the agreement had been recorded, and its validation had occurred, before the death of Elbert A. Searle, the deed would have been effectually validated. He could have had no equitable justification for objecting to the validation. The question arises as to what equities this defendant has which her husband lacked. At the moment of his death, a one-third interest in his interest in the property vested in her. She paid nothing for it. She

did nothing in reliance on the state of the record title. She was not a creditor of her husband's estate. Her position is not that of a bona fide purchaser for value, or even of a purchaser for value with notice. She has no equities other than those he had. See cases such as *Finnegan* v. *LaFontaine,* 122 Conn. 561, 568, 191 A. 337; *Sanford* v. *DeForest,* 85 Conn. 694, 698, 84 A. 111; *Green* v. *Abraham,* 43 Ark. 420, 425. In short, she could not by the mere act of inheritance gain interests, legal or equitable, in the property greater than those of the person from whom she inherited. *Shadden* v. *Zimmerlee,* 401 Ill. 118, 125, 81 N.E.2d 477. Her interest, to be sure, vested at the time of her husband's death, but her interest was a one-third interest in his interest, with whatever infirmities his interest had, including the possibility of validation of the deed. *First School District* v. *Ufford,* 52 Conn. 44, 49; *Watson* v. *Mercer,* 33 U.S. (8 Pet.) 88, 110, 8 L. Ed. 876. The 1953 validating act was effective to cure the lack of a seal in the deed.

The defendant also makes the basic claim that the omission of the word "heirs" resulted in the creation of life estates only. The claim is unsound in the light of our rule for the construction of conveyances, as already given. Under a strict application of the common-law rule, a deed running to a grantee without the use of the word "heirs" conveys only a life estate in the grantee. *Cole* v. *Steinlauf,* 144 Conn. 629, 631, 136 A.2d 744; Cleaveland, Hewitt & Clark, Probate Law and Practice § 422; Restatement, 1 Property § 27. Thus, under the common-law rule, a conveyance to "A in fee simple" would convey only a life estate to A. Restatement, 1 Property § 27, comment b, illust. 3. The mere statement of such a proposition demonstrates not only its absurd-

ity but its utter inconsistency with our rule of construction.

In the analogous situation of the construction of a covenant in an agreement creating an easement, we have held that whether the benefit of the covenant ran with the land or was merely personal to the covenantee depended, not exclusively on the presence or absence of the word "heirs," but on the intention expressed in the instrument. *Brown* v. *Connecticut Light & Power Co.*, 145 Conn. 290, 298, 141 A.2d 634, and cases cited therein. We have refused to hold that the artificial common-law formula of a grant to one "and his heirs" was the exclusive method of creating an easement extending beyond the grantee's lifetime. *Taylor* v. *Dennehy*, 136 Conn. 398, 402, 71 A.2d 596.

As far back as 1795, we held that the common-law verbal formula required in conveyances was not required in wills and that it was not an exclusive method of expressing an intention to devise a fee simple estate. *Holmes* v. *Williams*, 1 Root 335, 341. This holding was reaffirmed as recently as 1954 in *Pond* v. *Porter*, 141 Conn. 56, 65, 104 A.2d 228, citing *Duncan* v. *Higgins*, 129 Conn. 136, 145, 26 A.2d 849. In this respect our law has been in accord with that of other jurisdictions. Restatement, 1 Property § 37. Some such phrase as "outright and absolutely" is probably more often used to express the intention to devise a fee simple estate than is the common-law verbal formula, although that occasionally has been used as, for instance, in *Morehouse* v. *Bridgeport-City Trust Co.*, 137 Conn. 209, 211 n., 75 A.2d 493. Sometimes, indeed, the use of the common-law verbal formula in a will has led to disputes as to its proper interpretation, disputes which would probably not have arisen had some simple

wording such as "outright and absolutely" been employed. See id., 212.

There is no justification in reason or logic for restricting the effective expression of an intention to create a fee simple estate to the use of an artificial common-law verbal formula in the case of a deed and not making a corresponding restriction in the case of a will or of an instrument creating an easement or a covenant otherwise purporting to run with the land. Indeed, there is no justification for imposing such a restriction in the drafting of any instrument, whether it is a will or an inter-vivos conveyance. To impose such a restriction is to perpetuate a mere verbal formalism. *Holmes* v. *Williams*, supra, 342. We hold that the mere omission of the word "heirs" in a grant in a deed is not sufficient to defeat an otherwise clearly expressed intent to create a fee, nor arbitrarily to reduce it to a life estate.

In a number of our cases, the existence of the common-law requirement has been assumed. Fortunately, in no case have we directly so held. See Nassau, "Some Feudal Relics in the Connecticut Land Law," 19 Conn. B.J. 216, 217. Perhaps the case most nearly approaching such a holding is *Cole* v. *Steinlauf*, 144 Conn. 629, 631, 136 A.2d 744. That case certainly strongly intimates that in a conveyance the use of the word "heirs" is indispensable to the effective expression of an intention to create a fee simple estate in Connecticut and that the omission of the word necessarily reduces the estate granted to one for life. Such a rule is patently inconsistent with our settled rule that the construction of a conveyance is to be determined by the intention expressed therein. Actually, the case dealt with the marketability of title, and the holding went no fur-

ther than correctly to recognize that under the then state of our case law, which we now clarify, a conveyance which did not make use of the word "heirs" did not express an intention to grant a fee simple estate with sufficient certainty to create a marketable title. See Stephenson, "The Dictum of Cole v. Steinlauf: Its Causes and Its Implications," 32 Conn. B.J. 262-273.

Although the finding in this case discloses no facts regarding the situation of the parties to the deed, none are needed. The deed speaks for itself. The word "absolutely" used in the descriptions of the remainders is sufficient to create estates in fee simple in the remaindermen, even though these estates were subject to defeasance by the exercise of the power of sale. Upon the execution of the deed, Elbert A. Searle was left with no interest in the property which could survive his death and pass to his widow and heirs, apart from the bare legal title which was effectively extinguished by the validating act.

In the event that the power of sale is exercised, the intention that the cotenants making the sale shall have outright ownership of the proceeds is obvious. There can be no question regarding the efficacy or interpretation of the provision granting the power of sale, as such, if the agreement itself is otherwise valid.

Another claim of the defendant is that the agreement constitutes an attempt to convey property to third parties upon the death of the survivor of the parties and is void for failure to comply with the requirements of the Statute of Wills. General Statutes § 45-161. A purported transfer of property, with intent presently to transfer no interest but to defer the transfer until death, can be

validly accomplished only by an instrument which complies with the requirements of the Statute of Wills. *Costello* v. *Costello,* 136 Conn. 611, 614, 73 A.2d 333, and cases cited therein; Ballantine, "When Are Deeds Testamentary?" 18 Mich. L. Rev. 470, 482. But if the intent of the transferor is presently to transfer interests, even though their possession and enjoyment are deferred until the transferor's death, the instrument will ordinarily be valid as against attack as an attempted testamentary disposition of property by deed. Ballantine, op. cit., 483. Cases on this problem are collected in an annotation in 31 A.L.R.2d 532. The facts vary widely, and the results probably cannot, in all instances, be harmonized. But it is clear that it is the transferor's intention which controls. Under our rule, the inquiry as to the transferor's intent is not confined to, although it includes, that expressed in the instrument itself. The inquiry extends to and includes the intent manifested in the manner of delivery of the instrument, as in cases such as *Costello* v. *Costello,* supra, 616, and *Bowen* v. *Morgillo,* 127 Conn. 161, 167, 14 A.2d 724. That an instrument is in the form of a deed, as this on the whole was, is some indication of the transferor's intention presently to convey an interest. Note, 31 A.L.R.2d 532, 544. The recitation of a consideration in the form of mutual promises of all parties to the instrument is an attribute of a deed rather than of a will. *Faggelle* v. *Marenna,* 131 Conn. 277, 280, 38 A.2d 791.

The expressed intent is that the remaindermen were presently granted remainders in fee in the property, subject to divestment by the exercise of the reserved power of sale. The power of sale itself did not render the deed testamentary. *St. Louis County National Bank* v. *Fielder,* 364 Mo. 207, 212,

260 S.W.2d 483; *Smith* v. *Smith,* 167 Ga. 368, 374, 145 S.E. 661; *Vaughn* v. *Metcalf,* 274 Ky. 379, 384, 118 S.W.2d 727. Whether these remainders were contingent on the remaindermen's surviving the life tenants, or were vested subject to being divested by their failure to survive, we need not determine. Neither the power to sell, the exercise of which would defeat the interests of all the remaindermen, nor the nature of the remainders, even if contingent, would make the instrument testamentary. There was a present creation of future interests, that is, interests in which the possession and enjoyment were deferred. Simes & Smith, Future Interests (2d Ed.) § 1. But the present creation of such a future interest is not a testamentary act. Ballantine, op. cit., 482. The interests of all of the remaindermen, whatever they were, were irrevocably granted upon the execution of the deed, although subject to extinction if the power of sale was exercised. The deed did not remain ambulatory until the death of the grantors, as would have been the case with a will. It was not testamentary in character. *Whitehill* v. *Halbing,* 98 Conn. 21, 31, 118 A. 454.

But one other contention of the defendant need be mentioned. That is that the plaintiffs had to present a claim against Elbert A. Searle's estate. This contention was not properly raised in any assignment of error. It is obviously without merit under the rule of cases such as *Padula* v. *Padula,* 138 Conn. 102, 107, 82 A.2d 362, which hold that the presentation of a claim is not necessary when that claim is to an interest in real estate owned by a decedent at the time of his death and forming part of his estate.

The court correctly held that the defendant's interest in the property in question is limited to

the remainder interest granted her under the final dispositive clause of the deed; that this interest is defeasible by the exercise of the power of sale given the surviving cotenants; and that neither she nor the other distributees of the estate of Elbert A. Searle acquired, either by descent or distribution, any interests in the property which survived the validation of the deed.

There is no error.

In this opinion the other judges concurred.